JOSEPH McDOUGALD and PETER SINCLAIR v. JOSEPH GRA-
HAM.

A bought of B a tract of land on time, executed his note for the purchase money, and took a bond for title. Being unable to pay the purchase money, as it became due, they agreed that the land should be publically sold for cash, the proceeds of such sale to be applied in payment of the purchase money due, and the residue, if any, to be paid over to A. It was further agreed that B should bid for the land, to prevent its selling for less than the balance due, B at the same time informing A that he would bid no more than said balance amounted to, and became the purchaser at that sum. The bond for title, and the notes for the purchase money were cancelled. Shortly afterwards, B sold the land at an advance of $500. In an action by A to recover of B the amount so realized: *It was held,* that there being no allegation of fraud, the plaintiff A was not entitled to recover.

CIVIL ACTION, tried before HENRY, J., at Spring Term, 1876, of McDOWELL Superior Court.

The case is this: Plaintiffs bought of defendant a tract of land on time, executed notes for the purchase money, and took bond for title. Plaintiffs, after paying a considerable part of the purchase money, were unable to pay the balance; whereupon it was agreed that the land should be sold at auction for cash, the proceeds of sale to be applied, first to the payment of the unsatisfied part of the purchase money, and the residue, if any, to be retained by the plaintiffs. According to this arrangement the plaintiffs advertised the sale at auction, and the land was sold and bought

by defendant, at a bid just equal to the amount due for the purchase money. It was understood that the defendant, was to bid, so as to keep the land from going at a less sum than the balance due, but he told plaintiffs he would not run the land up any higher. Accordingly the defendant became the purchaser, at a bid amounting to the balance of the purchase money. The bond for title, and the notes given by plaintiffs for the purchase money, were cancelled. A short time afterwards the defendant sold the land at an advance of some $500.

This action is to recover that sum as money "had and received" for the plaintiffs—or on any other ground legal or equitable—that will sustain the action.

*Busbee & Busbee* for plaintiffs.

*Walter Clark*, for defendant, filed the following brief:

Record shows that a motion for change of *Venue* was made by defendant's counsel on affidavit before the answer was filed, *vide Fraley* v. *March et al.*, 68 N. C. Rep., 160, and defendant's counsel at the same time moved to dismiss for want of jurisdiction. Both motions were overruled, the plaintiffs having alleged in their complaint that O'Connell had acquired an indefeasible title to the land by his purchase from defendant without notice, and left them no remedy but an action for money. Now, if there can be no verbal waiver of such a contract as had been originally entered into by the several parties to this suit, as is insisted by the plaintiff's counsel, then this action is for the " determination of a right or interest " in real property—C. C P., sec. 66 (1,) and consequently there is a defect of jurisdiction in respect to the subject of the action. If so, it cannot be helped by waiver, consent, amendment or otherwise." The Court may stop the proceedings and dismiss the action. *Garrett* v. *Trotter*, 65 N. C. Rep., 435.

The action should have been dismissed because the com-

plaint does not state facts sufficient to constitute a cause of action. C. C. P., sec. 99, p. 39-40, *vide* Articles IX, X, XI, XII, which do not state any agreement that plaintiffs were to have any interest in the land after sale, which was to be absolute; but only "that it was *not contemplated* that defendant should bid at the sale." A contract requires the *consent of two parties*. This complaint does not allege that, but only a contemplation or mental reservation of plaintiff. It is consequently too weak to allow an issue to be formed whether there was an *agreement* that defendant should not bid at the sale.

His Honor did not err in submitting the second issue to the jury. The answer (section 9,) denies the allegation in the complaint that the plaintiff offered for O'Connell $9 per acre, and defendant refused by stating in this emphatic language : "That plaintiff freely acquiesced in the sale," and on the same day surrendered up the bond of this defendant to make title, &c. (Read the whole article.)

The language is equally as emphatic as any expression in the answer (to say nothing of the *complaint*) relating to the first issue submitted. Plaintiff *could not possibly* "*freely acquiesce*" in the sale, and at the same time say to defendant "O'Connell bids $9 per acre, and we claim the excess."

The language of Art. XIV of the complaint is *peculiar.* From the recorded evidence it is seen that the agreement was mutual that it should be a *cash sale*, but Art. XIV does not say that O'Connell made a *cash offer*. But the testimony of plaintiff (Sinclair) throws some light on the subject, and confesses that it *was not a cash offer*. There was no one present with authority to alter the terms of the sale already agreed on, and defendant need not have answered at all to such an irrelevant allegation, but he does so both by positive language in the answer, (sec. 9,) and direct evidence in testimony.

If the counsel upon both sides have agreed upon and

signed issues, (which was not the case here) still it would have been the duty of the Court to have submitted others, if from a perusal of all the pleadings and heading the evidence it appeared that the ends of justice would not otherwise be answered. *Jenkins* v. *Conly,* 70 N. C. Rep., 353.

The plaintiff's counsel called out the testimony of plaintiff Sinclair in reference to the offer of $9 per acre, and thereby put that question in issue.

The evidence does not show that the sale was made at the instance of the *defendant*, or was his sale, but that the land was advertised and sold by one of the plaintiffs, with the consent of the defendant, and with the understanding that it should bring the amount of his debt. The defendant might have brought an action for specific performance and could have purchased at a sale under a decree made in such case. The rule as to Trustees and others acting in a fiduciary capacity, does not apply to vendors; if applied, it would often cut them off from the only means of saving their debts. There is no principle of law that precludes a vendor from purchasing at a sale made *at the instance* of (as in this case,) or even with the consent of the vendee.

If there was no sufficient waiver of the contract by plaintiffs it follows that O'Connell did not get an indefeasible title, and the action should be dismissed. (But this point is taken and reason given in argument above.)

The question for a new trial on the ground of new discovered testimony, was one of discretion for his Honor, and cannot be reviewed in this Court—too well settled to require citation of authority ; but see *McCulloch* v. *Doak,* and wife, 68 N. C. Rep., 269 ; *Holmes* v. *Godwin,* 69 N. C. Rep., 467. The record (dates, &c.) show that his Honor took full time to consider the matter.

The question of granting a new trial on the ground of a misconception of the verdict is not a " matter of law or legal inference." Affidavits of jurors that they misconceived a

material fact afford no ground for a new trial, particularly when the affidavits appear to be in the handwriting of the party applying for it. *Lester* v. *Goode,* 2 Murph, 37 ; Section 299, C. C. P., did not alter the law in reference to this. In appeals from a Superior Court of law, the Supreme Court has never reviewed the exercise of a purely discretionary power in the Superior Court." *Long, et. al.* vs. *Holt,* 68 N. C. Rep., 53.

This is not a suit for specific performance, a suit on the contract to convey, but is a suit upon the contract of cancellation. So far as the sale was made, it appears in complaint and by the evidence that plaintiffs wrote out, and advertised the notice of sale, hence if writing was necessary, the offer on their part was signed. So far as the averment that defendant was not to bid at the sale (and it is for alleged breach of this the plaintiffs bring their suit) this appears to have been verbal and is certainly barred by the statute, but the jury find as a matter of fact there was no such agreement. The plaintiffs then have to fall back and allege that the rescision of the contract, *i. e.* the sale, was invalid. There are several objections to this :

1. Upon what contract do they sue then ? Certainly not upon the contract to convey, for such is not their complaint, and by their own showing they have not complied with it.

2. The agreement to rescind need not be in writing. No title ever vested in plaintiffs, or was prevented from vesting in them by their surrender of the contract when they surrendered possession of the land, this written contract never having been registered. *Waugh* v. *Blevins,* 68 N. C. Rep., 167 ; *Love* v. *Delk,* 1 Ire. Eq., 163 ; Brown on Frauds, sec. 60.

3. The agreement to rescind is executed. Bond delivered up and possession of the land. This is no action of ejectment. Statue of Frauds does not apply. *Choat* v. *Wright,* Dev., 287 ; Brown on Frauds, sec. 116.

4. Even had writing been necessary as to validity of the

McDOUGALD and SINCLAIR v. GRAHAM.

sale, the plaintiffs signing and publishing advertisement of sale was doubtless sufficient.

5. Plaintiffs did not take this ground below. On the contrary, they averred this was not an interest in land, and on this ground they defeated defendant's motion for change of venue.

Chief Justice PEARSON, delivering the opinion of the Court, after stating the case as above, proceeds:

After giving to the very learned argument of the plaintiffs' counsel due consideration, we are unable to see any ground on which the action can be sustained.

1. Had the defendant, after he sold the land at an advance on his bid, expressly assumed to pay the amount of the sum received in advance to the plaintiffs, possibly this promise might be taken out of the rule *nudum pactum* upon the idea of a moral obligation, as where one promises to pay a debt, barred by statute of limitations, by reason of the fact that the defendant had been paid a considerable part of the purchase money.

But there is no obligation of any such promise, and this novel question is not presented.

2. There is no allegation of fraud; on the contrary, the defendant, throughout the whole transaction, both by himself and his agent, acted fairly, openly and aboveboard. True, it would have been more liberal to have consented to a sale on credit, instead of insisting upon a sale for cash, but he was not obliged to do so by any rule of law or of equity, and as the plaintiffs were in default by not paying as they were bound to do, he had a right to require a sale for cash.

3. Mr. Folk took the position that by the contract of sale before the payment of the purchase money, the plaintiffs acquired an equitable estate, and the defendant held the land in trust to secure the purchase money, and then as a

trustee for the plaintiffs.   There can be no doubt as to the correctness of this position.   He then insisted that the relation of trustee and *cestui que trust* being established, the Court will scrutinize very closely any dealing between the parties in regard to the trust fund.   There can be no doubt as to the correctness of this doctrine, but the defendant has submitted to this scrutiny, and it is proved that he used no undue influence, but without making any delusory promises, simply urged the right to have his money.

4. It is claimed that defendant being a trustee had no right to buy at his own sale, and will be held to have bought in the land for the benefit of the trust fund.   In the first place this was not a sale made by the defendant, but was made by the plaintiffs, with his concurrence, and in the second place, it was agreed that he might bid to prevent the land from going at less than his debt, and he expressly refused to agree to run the land up any higher; he complied literally with this arrangement, and it was the plaintiff's misfortune that no other person was prepared to bid more, according to the terms of sale, which had been fully advertised by the plaintiffs, whose interest it was to make the land bring more if they could.   So it comes back to the complaint, that the defendant was not liberal enough to allow the sale to be made on credit.

5. It is insisted that as plaintiffs had an equitable estate in the land, the agreement to let it be sold was not binding under the statute of frauds, because not in writing.

We are inclined to the opinion, that so long as this agreement was executory, to-wit, at any time before the land was actually sold and the agreement had been executed, by a surrender and cancellation of the title bond and notes given for the purchase money, the plaintiffs might have refused to allow the sale to be made, but it is too late to fall back on the statute of frauds after the agreement is executed and the equitable estate of the plaintiffs had been extinguished.

We conclude that by force of the sale and the cancellation of the notes and title bond, the defendant became the absolute owner of the land, and was well entitled to sell it for his own benefit, and was under no liability to account to the plaintiffs for the sum he received in advance of his bid.

No error.

PER CURIAM.                    Judgment affirmed.