MARY J. ALEXANDER v. MRS. J. R. JOHNSTON.

(Filed 10 May, 1916.)

**1. Wills—Statutory Right.**

The right to dispose of property by will being exclusively statutory, the heir may not be deprived of his inheritance if the provisions of the statute with regard to the exercise of this right are disregarded.

**2. Same—Interpretation of Statutes.**

In construing a will, the intent of the testator should be given controlling effect, the efficacy of the instrument as a will being dependent upon the legislative intent gathered from the language of the statute, construed from a consideration of the existing law and the evils to be remedied, so that the remedy may be applied.

**3. Same—Holograph Wills.**

The purpose of our statute authorizing holograph wills is to enable persons to make valid wills by executing the instrument in their own handwriting, their names appearing therein, when they cannot procure the assistance of others or do not desire the intended disposition of their property to be known; and this without the formal attestation of witnesses.

**4. Same—Identification.**

The requirement that a holograph will, to be valid, must have been found among the valuable papers of the deceased or deposited with

some person for safe keeping is to furnish evidence that the deceased attached importance to the paper as a testamentary disposition and lessen the opportunity for fraud; and that the writing should be that of the testator, with his name therein appearing is for the purpose of identity and to prevent the possibility of unauthorized alterations, and of furnishing evidence that the paper is a completed instrument.

### 5. Same—Separate Papers—Sealed Envelope—Indorsed Signature.

A holograph will may be valid if written on different papers and their connection established, if the name of the testator therein appears and the whole is in his handwriting; and where a paper-writing is found among the valuable papers of the deceased after his death, purporting to be a testamentary disposition of his property, though his name does not therein appear, but it is inclosed in a sealed envelope with the name of the deceased indorsed thereon and immediately thereafter the word "will," and all is shown to be in the handwriting of the deceased, it is held sufficient in this respect to establish the writing as his holograph will.

APPEAL by caveators from *Carter, J.,* at February Term, 1916, of MECKLENBURG.

This is a caveat to two papers offered for probate as the will of Julia W. Johnston.

One of these papers is an envelope on which is written the words, "Julia W. Johnston Will," and the other is a paper found on the inside of the envelope, in the following words:

"LITTLE MILLS, RICHMOND COUNTY, March 31, 1911.

"My mind being as sound as usual, I herewith make my will.

"To my dear mother, if she survives me, I will my farm in Gaston County, that is, my part of my father's plantation.

"To my unmarried sisters, and to my little niece Margaret Barton Alexander, I leave the remainder · of my property, to be equally divided."

The propounders offered evidence tending to prove that the words "Julia W. Johnston Will" indorsed on the envelope and the whole of the paper inclosed therein were in the handwriting of Julia W. Johnston, the testatrix; that the papers were found after the death of Julia W. Johnston among her valuable papers, and that she had stated prior to death that she had made her will, and told where it could be found, which is the place where it was found.

It was also in evidence that the envelope when found after death, with the paper inclosed therein, was lightly sealed.

The propounders contended that the envelope and the paper on the inside constituted the will of Julia W. Johnston and should be admitted to probate.

The caveators contended that the statute as to holographic wills had not been complied with, in that the name of the testatrix had not been subscribed to or inserted in the will as required by the statute, and requested his Honor to so instruct the jury, which he refused to do, and the caveators excepted.

His Honor instructed the jury as follows:

"Gentlemen of the jury, if you believe the evidence, and it satisfies you by its greater weight, that the paper-writing introduced in evidence, and the envelope introduced with it, are both in the handwriting of Julia W. Johnston, deceased, and that they were intended to speak together as the last will and testament of said Julia W. Johnston, deceased; and if you are further satisfied, by the greater weight of the evidence, that the envelope and the paper were found among the valuable papers and effects of the said Julia W. Johnston, deceased, the envelope being at the time lightly sealed; and if you are further satisfied from the evidence that at the time of the making of said writing the said Julia W. Johnston was of the age of 21 years or more, and that she was of sound mind and memory, you will answer this issue 'Yes, and every part thereof.' If you are not so satisfied, gentlemen, you will answer it 'No.'"

The caveators excepted.

There was a verdict in favor of the propounders, and from the judgment rendered thereon the caveators appealed.

*Pharr & Bell and Archibald G. Robertson for caveator.*
*Clarkson & Taliaferro for propounder.*

ALLEN, J. The right to dispose of property by will is statutory (*Pullen v. Comrs.*, 66 N. C., 361), and can only be exercised by following the requirements of the statute. *In re Jenkins' Will*, 157 N. C., 429.

These requirements, prescribed by the legislative department for the execution of a will, are essential, and cannot be disregarded. They are the measure of the exercise of the right, and the heir cannot be deprived of his inheritance except in the way pointed out.

In determining the construction of a will, the controlling idea is to discover and give effect to the intent of the testator, but when the question of its formal execution is at issue we look to the intent of the Legislature (*In re Seamon*, 2 A. and E. Anno. Cases, 726),. and this intent must be gathered from the language, and from a consideration of the existing law, the evils intended to be remedied, and the remedy applied.

Blackstone says, page 14: "There are three points to be considered in the construction of all remedial statutes—the old law, the mischief,

and the remedy; that is, how the common law stood at the making of the act, what the mischief was for which the common law did not provide, and what remedy the Parliament hath provided to cure this mischief. And it is the business of the judge so to construe the act as to suppress the mischief and advance the remedy."

Our Court has also said, referring to the statute as to holographic wills: "The provisions of the statute are, of course, mandatory and not directory, and, therefore, there must be a strict compliance with them before there can be a valid execution and probate of a holographic script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clearly expressed purpose. It may be construed and enforced strictly, but at the same time reasonably." *In re Jenkins' Will,* 157 N. C., 435.

The purpose of the statute is to enable persons who cannot procure the assistance of others in the preparation of a will, or who are inclined to make known prior to death what disposition has been made of their property, to execute a valid will by a paper in their own handwriting, and without the formal attestation of witnesses, and the formalities as to execution are intended to effectuate this purpose and not to defeat it.

The paper must be found after death among the valuable papers of the deceased or deposited with some person for safe keeping. This is to furnish evidence that the deceased attached importance to the paper as a testamentary disposition and to lessen the opportunity for fraud or imposition. The paper must be in the handwriting of the deceased. This is to identify the testator, and to form the causal connection between the writer and the writing, and to prevent the possibility of change and alterations without the consent of the testator. The name of the testator must be subscribed to the paper or inserted in some part thereof, and this is also for identification of the testator, and to furnish evidence of the paper being a completed instrument.

All of these provisions of the statute have admittedly been followed in the present case, unless there has been a failure to subscribe or insert the name of the testator in the paper offered for probate.

Has there been such failure, and what is the meaning of the language to subscribe or insert the name of the testator?

The General Assembly is presumed to know of existing law and to adopt and enact statutes in conformity with it, and it is settled in this State that a valid will may be executed on separate papers (*In re Swain's Will,* 162 N. C., 213), and that the name of the testator need not be subscribed; but that it is a sufficient signing if the name appears in any part of the will. *Boger v. Lumber Co.,* 165 N. C., 559.

The Court said in the first of these cases, quoting from *Chief Justice Gibson:* "It is a rudimental principle that a will may be made on dis-

tinct papers, as was held in *Earl of Essex's case,* cited in *Lee v. Libb,* 1
Show., 69. It is sufficient that they are connected by their internal
sense, by coherence or adaption of parts," and in the second, quoting
from *Richards v. Lumber Co.,* 158 N. C., 56: "It is well settled in this
State that when a signature is essential to the validity of an instrument
it is not necessary that the signature appear at the end, unless the
statute uses the word 'subscribe.' *Devereux v. McMahan,* 108 N. C.,
134. This has always been ruled in this State in regard to wills, as
to which the signature may appear anywhere."

Under these decisions, if there had been no indorsement on the en-
velope, and one paper had been found on the inside in the hand-
writing of the deceased, beginning, "My mind being as good as usual, I,
Julia W. Johnston, herewith make my will"; or if two papers had been
found in the envelope, one in the form of the one found, which under-
takes to dispose of property, and the other in the handwriting of the tes-
tator, saying, "I, Julia W. Johnston, do make the paper inclosed here-
with as my will"; or if the paper found which disposes of property
alone had been in the envelope, but the testator had written on the in-
side of the envelope, "I, Julia W. Johnston, make the inclosed paper
my will": in either event the papers could be admitted to probate.

If so, why should probate be denied when words of similar import are
used on the outside of the envelope?

The identity of the testator is established by the handwriting on the
envelope and on the paper on the inside, and the physical connection by
the indorsement and the paper inclosed and the sealing of the envelope.

In 1 Schouler on Wills, sec. 316, the author says, speaking of a will
not in the handwriting of the testator and requiring attestation: "A
valid signature may be made on a separate piece of paper which is stuck
or fastened to the body of the will and contains nothing but the signa-
ture and attestation, provided it be shown that the execution was *bona
fide* and regular in other respects and the paper duly fastened at or
before the time of attestation."

We have found only one decided case directly in point, *Fosselman v.
Elder,* 98 Pa., 159, which is approved in *In re Harrison,* 196 Pa., 576.
In the *Fosselman case* the testatrix died leaving a will in due form,
dated 1878, which was duly admitted to probate. Subsequently there
was found among her valuable papers an envelope bearing the inscrip-
tion, in decedent's handwriting: "Dear Bella, this is for you to open,"
and inside was found a $2,000 note, and the following writing in testa-
trix's own hand:

LEWISTON, 21 October, 1879.

My wish is for you to draw this $2,000 for your own use should I die
sudden. ELIZABETH FOSSELMAN.

The Court allowed the probate of the envelope as part of the will, saying, in the opinion: "The only remaining question is whether the testatrix has sufficiently designated the plaintiff as the object of her bounty in the paper that is claimed to operate as a codicil to her will. The court below held that she had not, and accordingly entered judgment in favor of the defendant *non obstante veredicto*. In this we think there was error. It is true, the testamentary paper of 21 October, 1879, does not designate the plaintiff by name, and if we had no written evidence to show who was meant by the pronoun 'you,' the bequest of the note would be void for uncertainty; but it is a settled fact that the envelope is addressed to the plaintiff, and why should not that indorsement in the handwriting of the testatrix be taken as part of the testamentary disposition? It is well settled that a will may be written on several separate pieces of paper. It is not even essential to its validity that the different parts should be physically united; it is sufficient if they are connected by their internal sense or by a coherence and adaption of parts. *Wikoff's Appeal,* 3 Harris, 281. . . .

"Without pursuing the subject further, we are of opinion that the inscription on the envelope should be read as the preface to and in connection with the paper inclosed therein, and that they together constitute a valid testamentary disposition of the accompanying note, operating as a codicil to the will of the testatrix."

The case of *Warwick v. Warwick,* (Va.) 10 S. E., 843, relied on by the caveators, has facts something like those before us, but the opinion is based on a statute unlike ours, as is shown by the decision that the paper offered for probate was not signed, although it began, "I, Abram Warwick, declare this to be my last will and testament," which, as we have seen, is a signing under our statute.

The case of *Vogle v. Lekritter,* 139 N. Y., 223, also relied on, did not involve a holograph will, and the Court rejected an envelope as a part of a will because it was not intended as a testamentary disposition, but as a record of the official act of the notary who prepared the papers.

We have given the question involved careful consideration, and have reached the conclusion that the judgment ought not to be disturbed.

No error.