STATE v. BEN SIMS.

(Filed 25 May, 1938.)

1. **Indictment §§ 2, 13—Denial of male defendant's motion to quash for that women were excluded from jury held not prejudicial.**

The male defendant moved to quash the bill of indictment on the ground that it was returned by a grand jury composed entirely of men and that women had been unlawfully excluded therefrom. *Held:* There had been no discrimination against the class or sex to which defendant belongs, and he could not have been prejudiced by the alleged *discrimination, and* therefore he may not raise the question of the qualification of women to serve as jurors or maintain that the proceeding constituted a violation of the equal protection guaranteed by the Fourteenth Amendment of the Federal Constitution and by Art. I, sec. 17, of the State Constitution.

2. **Criminal Law § 41f—Testimony of defendant on cross-examination as to convictions for gambling held some evidence of bad character.**

When defendant testifies in his own behalf, the State may impeach his credibility by testimony of witnesses as to his general reputation, and by cross-examination of defendant, as to specific acts, and such cross-examination is not limited to felonies or to crimes involving moral turpitude, but may include any acts tending to impeach his character, and testimony of defendant on cross-examination that he had been arrested for beating a ride on a freight train, and had been repeatedly convicted of gambling, constitutes some evidence of bad character which the court may properly bring to the jury's attention in charging it as to the credibility to be given defendant's testimony.

3. **Criminal Law § 53d—**

An instruction that "there was evidence tending to show that he (the *defendant)* is a man of bad character," said while stating the contentions of the State, cannot be held for error as an expression of opinion by the court on the weight or credibility of the testimony in violation of C. S., 564.

4. **Criminal Law § 53a—**

Evidence of good character of defendant on trial for murder is a subordinate and not a substantive feature of the trial, and the failure of the court to refer thereto in the charge will not ordinarily be held for error in the absence of written request for such instruction. C. S., 565.

5. **Criminal Law § 79—**

Assignments of error not discussed in appellant's brief are deemed abandoned. Rule of Practice in the Supreme Court, No. 28.

Seawell, J., took no part in the consideration or decision of this case.

Appeal by the defendant from *Harding, J.,* at October Term, 1937, of Guilford. No error.

There was evidence tending to show that the defendant fatally shot the deceased after premeditation and deliberation. There was also evidence tending to show that the defendant fired the fatal shots in self-defense. The issue of the defendant's guilt was submitted to the jury under a charge wherein they were instructed that they might return one of four verdicts: Guilty of murder in the first degree, guilty of murder in the second degree, guilty of manslaughter, or not guilty.

The jury returned a verdict of guilty of murder in the first degree, and from judgment of death the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Willis for the State.*

*Harry Rockwell and Stern & Stern for defendant, appellant.*

SCHENCK, J. Exceptive assignments of error Nos. 1, 2 and 3 assail the court's action in overruling the defendant's motion made in apt time to quash the bill of indictment for the reason that women had been excluded from the jury list.

The court found as facts that women were not placed upon the jury lists in Guilford County and that women were systematically excluded from said lists, even though they may be of good moral character and of sufficient intelligence and may own both real and personal property in said county.

The defendant states in his brief, "Whether this action (the overruling of the motion to quash) was error raises two questions: (1) Whether women are qualified to serve as jurors? and (2) Whether that question can be raised by this defendant?"

We will consider the second question first. The defendant is a male person. Therefore even if it be conceded that there is a discrimination in the exclusion of women from the jury such discrimination could not have been against the class to which the defendant belongs, which, according to the weight of authorities, is a prerequisite to his right to raise the question of prejudice by discrimination. A person who is not included in the class against which there has been a discrimination cannot take advantage of the discrimination by pleading that the proceeding constitutes a violation of the equal protection guaranteed by the Fourteenth Amendment of the Constitution of the United States, and by Article I, section 17, of the Constitution of North Carolina. In the case of *McKinney v. Wyoming,* 16 L. R. A., 710 (30 Pac., 293), wherein the defendant, a male person placed on trial before a jury from which women had been excluded, sought to have the indictment quashed, the Court said: ". . . the very idea of a jury is that the body of men of whom it is composed are the peers or equals of the person whose rights it is selected or summoned to determine, and that they must be of the

same legal status in society as that which he holds. The plaintiff in error asserts a right or privilege of having members of the opposite sex, as well as those of his own sex, to determine his rights, because they are unconstitutionally excluded from enjoying a right granted to them, and not because anyone of his own sex is denied the right. If women have the right, if it is a right, to serve as jurors, and to 'assist in the administration of justice' thereby, it seems that no one but a woman—one of the class or sex whose rights have been invaded—can assert that right. It must be demanded by one who has been denied the equal protection of the law, and a civil or political right or privilege of which she, in common with her sex, has been deprived. The courts will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who, therefore, has no interest in defeating it. Cooley, Const. Lim., 164."

While it has been held that members of the Negro race may successfully demand that they be not placed upon trial upon a bill of indictment found by a jury from which Negroes had been excluded, *Neal v. Delaware,* 26 Law Ed., 567 (103 U. S., 370), we apprehend that it would not be held that a member of the Caucasian race could successfully move to have an indictment quashed because of the exclusion of Negroes from the jury. See also *S. v. Peoples,* 131 N. C., 784.

We are of the opinion, and so hold, that the defendant in this case, being a male person, cannot raise the question as to whether women may serve on the jury by a motion to quash the bill of indictment; and since it is not properly raised, we are not called upon to decide the first question suggested in appellant's brief.

The assignments of error Nos. 1, 2 and 3 cannot be sustained.

Exceptive assignments of error Nos. 24, 25 and 26 assail the following excerpt from the charge: "There is evidence tending to show that he (the defendant) is a man of bad character. You will consider that, but if you believe what the defendant says about it to be true you will give his evidence the same weight as you would if he was not interested."

In order to understand the portion of the charge assailed it is necessary that it be read in connection with what preceded it. The court charged: "The State contends that you ought not to believe what he (the defendant) says because he is interested in your verdict. He is interested. His life is at stake. His liberty is at stake. And because of the interest he has got the State contends he would be moved to give that coloring and accentuation to his testimony that would be of greatest advantage. It is your duty to scrutinize his testimony in the case. There is evidence tending to show that he is a man of bad character. You will consider that, but if you believe what the defendant says about it to be true you will give his evidence the same weight as you would if he was not interested."

The appellant contends that the foregoing excerpt was error because there was no evidence "tending to show that he is a man of bad character," and that it constituted an expression of opinion by the court that a fact had been sufficiently proven.

While it is true the State offered no witness who testified that the defendant was a man of bad character, the State did draw from the defendant on cross-examination as a witness in his own behalf the admission that he had, in 1917, in Knoxville, Tennessee, been arrested for beating a ride on a freight train and was unable to pay a fine of $9.90 and was compelled to serve 30 days, that he was "up for" gambling in Raleigh and was fined $6.55, that he was put in jail three times and fined for gambling in Winston-Salem "over three years ago," and that he "was caught twice for gambling" in Greensboro. In *Edwards v. Price,* 162 N. C., 244, *Clark, C. J.,* says: "The rule as to this matter has been fully settled by many decisions in this Court. It is this: The party himself, when he goes on the witness stand, can be asked questions as to particular acts impeaching his character, but as to other witnesses it is only competent to ask the witness if he 'knows the general character of the party' . . ." See also *S. v. Colson,* 193 N. C., 236.

It is clear that there are two methods of proving the bad character of the defendant when he becomes a witness in his own behalf, first, by witnesses who testify that they know his general character, and, second, by cross-examinations as to particular acts of which the defendant has been guilty, which tend to impeach his character. *S. v. Lawhorn,* 88 N. C., 634. It is not the practice in this jurisdiction to limit the cross-examination for the purpose of impeachment to felonies, or to crimes involving moral turpitude. In fact, cross-examination for the purpose of impeachment is not limited to conviction of crimes. Any act of the witness which tends to impeach his character may be inquired about or proven by cross-examination. *S. v. Davidson,* 67 N. C., 119.

The admissions made by the defendant when a witness in his own behalf was some evidence tending to show that he was a man of bad character to be considered by the jury. The weight to be given to this evidence was for the determination of the jury. This is in effect what the judge charged.

We cannot agree with the contention of the defendant that the portion of the charge assailed constituted an expression of opinion by the court that a fact had been sufficiently proven in violation of C. S., 564. All the court told the jury was that "there was evidence tending to show that he (the defendant) is a man of bad character," and this was said while the contentions of the State were being set forth.

The defendant complains that the court failed to instruct the jury as to evidence tending to show he was a man of good character. There was no request for such instruction, and in the absence of such request

the omission cannot be held for reversible error. "The statute, it is true, requires the judge plainly and correctly to state the evidence and to declare and explain the law arising thereon (C. S., 564), and this requirement has been construed as implying that on all the substantive features of a case a correct charge must be given without regard to a special prayer, but as to subordinate features or particular phases of the evidence a litigant who desires special explanation should make proper request for appropriate instructions. *S. v. Thomas,* 184 N. C., 757; *S. v. Merrick,* 171 N. C., 795; *S. v. Davidson,* 172 N. C., 944; *S. v. Fulford,* 124 N. C., 798; *S. v. Groves,* 119 N. C., 822; *S. v. Varner,* 115 N. C., 745; *S. v. Bailey,* 100 N. C., 528." *S. v. O'Neal,* 187 N. C., 22.

Evidence of the good character of the defendant on trial for murder is a subordinate and not a substantive feature of the trial and the failure of the judge to charge the jury relative thereto will not generally be held for reversible error unless there be a request for such instruction. In this case there was not only no request in writing for such instruction as provided by C. S., 565, but the defendant failed to avail himself of the opportunity extended by the court at the close of the charge to call his attention to "anything omitted."

The assignments of error Nos. 24, 25 and 26 cannot be sustained.

The assignments of error not discussed in this opinion are not set out in the appellant's brief and are therefore taken as abandoned by him. Rule 28, Rules of Practice in the Supreme Court, 200 N. C., 831.

On the record we find

No error.

SEAWELL, J., took no part in the consideration or decision of this case.