IN THE MATTER OF: THE APPEAL OF MR. JAMES G. MARTIN, CHAIRMAN OF THE MECKLENBURG COUNTY BOARD OF COMMISSIONERS, FROM A DECISION OF THE MECKLENBURG COUNTY BOARD OF EQUALIZATION AND REVIEW EXEMPTING FROM TAX CERTAIN PROPERTY BELONGING TO ROSS LABORATORIES AND STORED IN THE PUBLIC WAREHOUSE IN CHARLOTTE AS OF JANUARY 1, 1971

No. 83

(Filed 26 November 1974)

1. Statutes § 4— action to test validity — standing to bring

Only those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights.

In re Appeal of Martin

2. **Counties § 1— creation and taxing power from General Assembly**
    The counties of N. C. were created by the General Assembly as governmental agencies of the State and they derive their taxing power from the General Assembly.

3. **Constitutional Law § 4— standing to attack constitutionality of statute**
    Mecklenburg County could not accept the benefits of the taxing power conferred upon it by G.S. 105-281 (now G.S. 105-275) and at the same time reject on constitutional grounds the statutory classification of property which was exempt from taxation.

4. **Constitutional Law § 4— constitutionality of statute — standing to raise**
    A person who is seeking to raise the question as to the validity of a discriminatory statute has no standing for that purpose unless he belongs to the class which is prejudiced by the statute.

5. **Taxation § 2— classification — reasonableness**
    The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products; while the General Assembly may not establish a classification that is arbitrary or capricious, a classification is constitutional if founded upon a reasonable distinction or difference and if it bears a substantial relation to the object of the legislation.

6. **Taxation § 2— classification of property — constitutional provision**
    The interest of Mecklenburg County in collecting tax revenues under the taxing power of G.S. 105-281 (now G.S. 105-275) is not within the zone of interest intended to be protected by Section 2 of Article V of the State Constitution which provides that the General Assembly alone has the power to classify property for taxation and that no class shall be taxed except by a uniform rule.

7. **Taxation § 23— standing to question constitutionality and interpretation of statute**
    Although it lacked the requisite standing to question the constitutionality of a taxing statute, Mecklenburg County was not precluded from questioning the interpretation of the statute.

8. **Taxation § 23— construction of statute — exemption statute strictly construed**
    When the meaning of a tax statute is doubtful, it should be construed against the State and in favor of the taxpayer unless a contrary legislative intent appears; on the other hand, statutes providing exemption from taxation are strictly construed.

9. **Taxation § 25— ad valorem taxes — goods in warehouse exempted**
    The General Assembly intended to exempt from taxation the property specified in paragraph three of G.S. 105-281 (now G.S. 105-275) when it was placed in a public warehouse *for any length of time*.

10. **Taxation § 25— ad valorem taxes — goods in warehouse exempted — name of consignee not required on bill of lading**

It was not the intent of the legislature to require that goods placed in a public warehouse for transshipment to in-state or out-of-state destinations have designated on the original bill of lading the name of the ultimate consignee of the goods in order for the goods to be exempt from taxation.

11. **Taxation § 25— ad valorem taxes — goods in warehouse exempted — public warehouse status**

The General Assembly in G.S. 105-281 intended to deny public warehouse status to the owned or leased premises of the ultimate consignee of goods, and designation of the intermediate warehouse destination of the shipment on the original bill of lading did not destroy the warehouse's status as a public warehouse and thereby remove the goods from tax-exempt status.

Chief Justice BOBBITT not sitting.

ON *certiorari* to the Court of Appeals to review its decision, 22 N.C. App. 225, 206 S.E. 2d 334 (1974), reversing judgment of *Hasty, J.,* 16 April 1973 Schedule A Session, MECKLENBURG Superior Court.

Facts necessary to understand the questions involved on this appeal appear in the numbered paragraphs below.

1. Abbott Laboratories, Inc. is an Illinois corporation with its principal office at North Chicago, Illinois. Ross Laboratories is a division of Abbott Laboratories, Inc. and is operated as a separate entity with its principal office at Columbus, Ohio. Together they constitute the "taxpayer" involved in this litigation.

2. At various times during the latter part of 1970 and throughout the calendar year 1971 the taxpayer shipped to Carolina Transfer and Storage Company, in carload lots by common carrier, various types and kinds of products manufactured at plants in Ohio, South Dakota and Michigan. These products were packed in standard size cases at the plants where manufactured and the cases were sealed. The cases are so constructed that when they are sealed and stacked they interlock so that straps, wires or other bindings are not required for storage or shipment. The taxpayer transshipped from its inventory at Carolina Transfer and Storage Company only in case lots and in the same sealed cases which remained unbroken while in storage. Transshipment was made by Carolina Transfer and Storage Company to the consignees of the taxpayer when and as directed by the taxpayer.

3. Each shipment made by taxpayer to Carolina Transfer and Storage Company was evidenced by an invoice and bill of lading requiring delivery of the merchandise to Carolina Transfer and Storage Company, Charlotte, North Carolina; and each such bill of lading bore either the words "for transshipment" or the word "transshipment" incribed on its face either in the space identifying Carolina Transfer and Storage Company as consignee or in the space for identity of the delivering carrier.

4. Carolina Transfer and Storage Company is a North Carolina corporation which operates a public bonded warehouse at Charlotte and the taxpayer neither owns nor has any financial interest in or control over said business or the premises where the same is located.

5. During the calendar year 1971 the taxpayer gave Carolina Transfer and Storage Company specific instructions from time to time as to the type of merchandise and number of cases to be transshipped and the identity of the consignee to which such transshipments were to be made. Pursuant to such instructions Carolina Transfer and Storage Company transshipped by common carrier to persons, firms and corporations both within and without the State of North Carolina varying numbers of cases of the taxpayer's products theretofore received and held by it for transshipment. Purchase orders from the ultimate consignees were not held by taxpayer or Carolina Transfer and Storage Company at the time it received the taxpayer's products at its storage warehouse.

6. As required by law, during the month of January 1971 the taxpayer reported the value of its inventory which had been shipped to Carolina Transfer and Storage Company for transshipment and which was located in said warehouse on 1 January 1971. The taxpayer then advised the Mecklenburg Tax Supervisor that taxpayer considered such inventory to be nontaxable by reason of the provisions of G.S. 105-281 (now G.S. 105-275).

7. Based upon a declared and actual valuation of $77,405.00, Mecklenburg County assessed an ad valorem tax on the inventory for the year 1971. The taxpayer appealed the assessment to the Mecklenburg Board of Equalization and Review, contending that under the provisions of G.S. 105-281 (1969) said personal property is exempt from taxation.

8. The Mecklenburg Board of Equalization and Review at its regular meeting on 25 October 1971 upheld the contentions of the taxpayer and by order dated 8 November 1971 found as a fact and concluded as a matter of law that the property of the taxpayer stored at Carolina Transfer and Storage Company was not subject to ad valorem tax in Mecklenburg County. The County gave timely notice of appeal to the State Board of Assessment (now the Property Tax Commission).

9. By order dated 4 January 1973 the State Board of Assessment, sitting as the State Board of Equalization and Review, upheld the contentions of the taxpayer by affirming the decision of the Mecklenburg County Board of Equalization and Review exempting the property from taxation. The County thereupon appealed to the superior court for judicial review as provided by G.S. 143-306, et seq., contending that the property is subject to taxation or, in the alternative, that G.S. 105-281 (1969), relied on by the taxpayer for exemption status, is unconstitutional insofar as it applies to the property in question.

10. The taxpayer voluntarily became a party to the review proceedings in the superior court and the matter was heard without a jury before Judge Hasty at the 16 April 1973 Schedule A Session of Mecklenburg Superior Court. By judgment dated 17 October 1973, Judge Hasty sustained and affirmed the decision of the State Board of Assessment, sitting as the State Board of Equalization and Review, and held specifically that (a) G.S. 105-281 (1969) is valid and constitutional, (b) the exemption of taxpayer's property from taxation as provided by G.S. 105-281 (1969) is not discriminatory in that the General Assembly is empowered to classify property for taxation and to exclude or exempt property so long as the classification is made by general law uniformly applicable throughout the State, and (c) Mecklenburg County is a governmental agency created by the General Assembly for administrative purposes, exercising only such powers and duties as are conferred upon it, and has no right as a matter of law to question the constitutionality of G.S. 105-281 (1969) under the provisions of which the property in question is exempt from taxation by the County. Mecklenburg County in apt time objected and excepted to said ruling and appealed to the Court of Appeals.

11. The Court of Appeals reversed the judgment of the superior court, holding that taxpayer's property stored in Carolina Transfer and Storage Company's warehouse was not held

"for the purpose of transshipment" within the meaning of that term as used in G.S. 105-281 (1969) and hence the exemption provisions of that statute are inapplicable. The constitutional question was not reached, and whether Mecklenburg County has standing to question the constitutionality of the statute was not discussed. We allowed the taxpayer's petition for certiorari to review that decision.

*Boyle, Alexander & Hord by B. Irvin Boyle, Attorneys for Ross Laboratories, Appellant.*

*Ruff, Bond, Cobb, Wade & McNair by Hamlin L. Wade, Attorneys for Mecklenburg County, Appellee.*

HUSKINS, Justice.

Mecklenburg County contends that Chapter 1185 of the 1967 Session Laws, amending G.S. 105-281 (1965), which classifies certain personal property stored in public warehouses as nontaxable, is unconstitutional in that it violates Article V, Section 2 of the North Carolina Constitution. The taxpayer contends that Mecklenburg County has no standing to question the constitutionality of the statute. We first determine whether the County has standing to raise the constitutional question.

The text of the law in question, later codified as the third paragraph of G.S. 105-281 (1969 Cum. Supp.), in effect at the time this action arose, reads as follows:

"§ 105-281. *Property subject to taxation.*—All property, real and personal, within the jurisdiction of the State, not especially exempted, shall be subject to taxation.

Cotton, tobacco, other farm products, goods, wares, and merchandise which are held or stored for shipment to any foreign country, or held or stored at a seaport terminal awaiting further shipment after being imported from a foreign country through any seaport terminal in North Carolina, except any such products, goods, wares, and merchandise which have been so stored for more than twelve months on the date as of which property is assessed for taxation, are hereby designated a special class of personal property and shall not be assessed for taxation. It is hereby declared to be the policy of this State to use its system of property taxation in such manner, through the classification of the aforementioned property, as to encourage the

---

development of the ports of North Carolina. For purposes of this section and of this subchapter, the term 'property, real and personal,' as used in the first paragraph of this section, shall not include the property hereinabove in this paragraph so specially classified.

Personal property of nonresidents of the State in their original package or fungible goods in bulk, belonging to a nonresident of the State, shipped into this State and placed in a public warehouse for the purpose of transshipment to an out-of-state or within the State destination and so designated on the original bill of lading, or personal property of residents of the State in their original package and fungible goods in bulk, belonging to a resident of the State, placed in a public warehouse for the purpose of transshipment to an out-of-state destination and so designated on the original bill of lading, shall be, while so in the original package, or as fungible goods in bulk, in such warehouse, and they are hereby designated a special class of personal property and shall not be assessed for taxation. No portion of a premises owned or leased by a consignor or consignee, or a subsidiary of a consignor or consignee, shall be deemed to be a public warehouse within the meaning of this section despite any licensing as such. It is hereby declared to be the policy of this State to use its system of property taxation in such manner, through the classification of the aforementioned property, to encourage the development of the State of North Carolina as a distribution center. For purposes of this section and this subchapter, the term 'property, real and personal,' as used in the first paragraph of this section, shall not include the property hereinabove in this paragraph so specially classified."

[1]   The general rule with respect to those eligible to question the validity of a statute was stated by Justice Sharp, writing for the Court, in *Stanley, Edwards, Henderson v. Dept. of Conservation & Development*, 284 N.C. 15, 199 S.E. 2d 641 (1973), as follows:

"Under our decisions '[o]nly those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights.' *Canteen Service v. Johnson*, 256 N.C. 155, 166, 123 S.E. 2d 582, 589 (1962). *See also Nicholson v. Education Assistance Authority*, 275 N.C. 439, 168 S.E. 2d

401 (1969); *In Re Assessment of Sales Tax*, 259 N.C. 589, 131 S.E. 2d 411 (1963); *Carringer v. Alverson*, 254 N.C. 204, 118 S.E. 2d 408 (1961); *James v. Denny*, 214 N.C. 470, 199 S.E. 617 (1938). The rationale of this rule is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. 'The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions." ' *Flast v. Cohen*, 392 U.S. 83, 99, 20 L.Ed. 2d 947, 961, 88 S.Ct. 1942, 1952 (1968)."

Even though the County's tax revenues are diminished by the tax exempt classification in the third paragraph of G.S. 105-281 (1969 Cum. Supp.), the taxpayer urges that the County, as a creature of the Legislature, has no standing to question, on constitutional grounds, the validity of tax legislation enacted by the General Assembly. *Cf. Brown v. Comrs. of Richmond County*, 223 N.C. 744, 28 S.E. 2d 104 (1943).

We held in *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972), that the State had standing to challenge the constitutionality of former G.S. 7A-457(a) which prevented an indigent defendant from waiving counsel at any critical stage of a capital case. Mecklenburg County contends that *Mems* is authority for the County's standing in this case. Not so. *Mems* was a criminal proceeding in which the State's right to introduce otherwise competent and vitally important evidence and its right to carry out the judgment it had obtained against the defendant in the trial court were defeated by a statutory classification of persons singled out by the Legislature for special treatment when there was no reasonable relation between the classification and the objective the statute sought to accomplish. Moreover, in the factual context of *Mems*, the State, and only the State, acting through the Attorney General, a constitutional officer under the executive branch of government, was in a position to raise the constitutional question. This distinguishes *Mems*. In the case before us other taxpayers adversely affected have standing to raise the constitutional issue Mecklenburg seeks to raise. Thus *Mems* is not authority for the County's position.

The question whether a state subdivision has standing to contest the constitutionality of a State statute has produced con-

flicting decisions in other jurisdictions. *C. Hewitt and Sons Co. v. Keller,* 223 Iowa 1372, 275 N.W. 94 (1937); *King County v. Port of Seattle,* 37 Wash. 2d 338, 223 P. 2d 834 (1950); 16 C.J.S., Constitutional Law, § 76 (1956). But the prevailing view is that a subdivision of the State does not have standing to raise such a constitutional question. *Baltimore County v. Churchill, Ltd.,* 271 Md. 1, 313 A. 2d 829 (1974). Likewise, a majority of jurisdictions which have considered whether a city or county may challenge a tax statute on constitutional grounds answer in the negative. *Board of Review v. Southern Bell Tel. & Tel. Co.,* 200 Ala. 532, 76 So. 858 (1917); *City of Sebring v. Wolf,* 105 Fla. 516, 141 So. 736 (1932); *C. Hewitt and Sons Co. v. Keller, supra; Baltimore County v. Churchill, Ltd., supra; City of Buffalo v. State Board of Equalization and Assessment,* 26 App. Div. 2d 213, 272 N.Y.S. 2d 168 (1966); *Chesterfield County v. State Hwy. Dept.,* 191 S.C. 19, 3 S.E. 2d 686 (1939); *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P. 2d 1056 (1937); *Marshfield v. Cameron,* 24 Wis. 2d 56, 127 N.W. 2d 809 (1964). *Contra, State ex rel. Tulane Homestead Ass'n v. Montgomery,* 185 La. 777, 171 So. 28 (1936); *Clearfield Bituminous Coal Corp. v. Thomas,* 336 Pa. 572, 9 A. 2d 727 (1939). Although these decisions do not articulate a well defined rule of law, much of their reasoning in persuasive.

[2]    The counties of North Carolina were created by the General Assembly as governmental agencies of the State. N. C. Const. Art. VII, § 1; *Saluda v. Polk County,* 207 N.C. 180, 176 S.E. 298 (1934); *State ex rel. O'Neal v. Jennette,* 190 N.C. 96, 129 S.E. 184 (1925). The counties have no inherent taxing power. *Hajoca Corp. v. Clayton, Comr. of Revenue,* 277 N.C. 560, 178 S.E. 2d 481 (1971); *Murphy v. Webb,* 156 N.C. 402, 72 S.E. 460 (1911). The power of taxation must be exercised by the legislative branch. *Hajoca Corp. v. Clayton, Comr. of Revenue, supra; Saluda v. Polk County, supra.* Thus Mecklenburg County derives its power to tax from the Legislature and cannot complain that the enabling legislation is lacking in breadth.

[3]    As a general rule, "one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens." 16 Am. Jur. 2d, Constitutional Law, § 135 (1964); *see Utilities Comm. v. Electric Membership Corp.,* 276 N.C. 108, 171 S.E. 2d 406 (1970); *City of Durham v. Bates,* 273 N.C. 336, 160 S.E. 2d 60 (1968); *Ramsey v. Veterans Commission,* 261 N.C. 645, 135 S.E. 2d 659 (1964); *Convent v. Winston-Salem,* 243

N.C. 316, 90 S.E. 2d 879 (1956). When Mecklenburg County sought to assess the property of the taxpayer in this case, G.S. 105-281 (1969 Cum. Supp.) included both the general taxing power which the County was exercising and the nontaxable classification it now seeks to attack on constitutional grounds. Such an attack is prohibited by the quoted rule. The County may not accept the benefits of the taxing power conferred upon it by the statute and at the same time reject on constitutional grounds the statutory classification of property which "shall not be assessed for taxation."

[4]   Finally, the County is precluded from challenging the constitutionality of G.S. 105-281 (1969 Cum. Supp.) on yet another ground: It is not a member of the class subject to the alleged discrimination. *State v. Trantham*, 230 N.C. 641, 55 S.E. 2d 198 (1949); *State v. Sims*, 213 N.C. 590, 197 S.E. 176 (1938). *See also Stone v. City of Wichita*, 145 Kan. 377, 65 P. 2d 595 (1937). The general rule is that "a person who is seeking to raise the question as to the validity of a discriminatory statute has no standing for that purpose unless he belongs to the class which is prejudiced by the statute." 16 Am. Jur. 2d, Constitutional Law, § 123 (1964). One recognized exception to this rule allows an affected party to allege discrimination when no member of a class subject to the alleged discrimination is in a position to raise the constitutional question. *Quong Ham Wah Co. v. Industrial Acc. Com.*, 184 Cal. 26, 192 P. 1021 (1920), *writ dismissed*, 255 U.S. 445, 65 L.Ed. 723, 41 S.Ct. 373 (1921); *cf. State v. Mems, supra*. The taxpayers of this State who are members of the class and subject to the alleged discrimination here asserted by Mecklenburg County are under no such disability. *Stanley, Edwards, Henderson v. Dept. of Conservation & Development, supra*.

[5]   Article V, Section 2 of the Constitution of North Carolina provides, *inter alia*, that the General Assembly alone has the power to classify property for taxation and that *no class shall be taxed except by a uniform rule*. Even so, this constitutional provision does not prohibit reasonable flexibility and variety appropriate to reasonable schemes of State taxation. "The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." *Allied Stores of Ohio v. Bowers*, 358

U.S. 522, 3 L.Ed. 2d 480, 79 S.Ct. 437 (1959) (resident-nonresident classifications in tax statute). While the General Assembly may not establish a classification that is arbitrary or capricious, a classification is constitutional if founded upon a reasonable distinction or difference and bears a substantial relation to the object of the legislation. *Ohio Oil Co. v. Conway,* 281 U.S. 146, 74 L.Ed. 775, 50 S.Ct. 310 (1930); *cf. State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 160 N.W. 1077 (1917) (public warehouse-private warehouse classifications in tax statute).

[6] Under our Constitution uniformity in taxation relates to equality in the burden on the State's taxpayers. *Hajoca Corp. v. Clayton, Comr. of Revenue, supra.* The interest of Mecklenburg County in collecting tax revenues under the taxing power of G.S. 105-281 (1969 Cum. Supp.) is not within the zone of interest intended to be protected by Article V, Section 2 of our State Constitution. *See Data Processing Service v. Camp,* 397 U.S. 150, 25 L.Ed. 2d 184, 90 S.Ct. 827 (1970). Accordingly, Mecklenburg County cannot contend that the provisions of G.S. 105-281 (1969 Cum. Supp.) violate principles of uniformity.

Applying the foregoing principles, we hold that Mecklenburg County does not have standing to challenge the nontaxable classification of property contained in the third paragraph of G.S. 105-281 (1969 Cum. Supp.). Therefore, the constitutional question is not properly before us. Hence, we neither reach nor decide it. *State v. Fredell,* 283 N.C. 242, 195 S.E. 2d 300 (1973); *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 168 S.E. 2d 401 (1969); *Carringer v. Alverson,* 254 N.C. 204, 118 S.E. 2d 408 (1961).

[7] Although lacking the requisite standing to question the constitutionality of G.S. 105-281 (1969 Cum. Supp.), the County is not precluded from questioning the interpretation of the statute. *In re Appeal of Harris,* 273 N.C. 20, 159 S.E. 2d 539 (1968); *In re Assessment of Sales Tax,* 259 N.C. 589, 131 S.E. 2d 441 (1963); *Waterford v. Connecticut State Board of Education,* 148 Conn. 238, 169 A. 2d 891 (1961). The taxpayer's contention that the property in question is tax exempt was upheld successively by the Mecklenburg Board of Equalization and Review, the State Board of Assessment, and Mecklenburg Superior Court. The County's interpretation of the statute, construing the term "transshipment" to mean "a mere temporary break in the shipment of goods" gained acceptance for the first time in the Court

of Appeals. That court held the goods were subject to taxation because they were not held "for the purpose of transshipment" within the meaning of G.S. 105-281 (1969 Cum. Supp.). The taxpayer contends that holding was erroneous and we agree.

In construing and interpreting the language of G.S. 105-281 (1969 Cum. Supp.), we are guided by the primary rule of construction that the intent of the Legislature controls. 73 Am. Jur. 2d, Statutes, § 145 (1974); *Pipeline Co. v. Clayton, Comr. of Revenue,* 275 N.C. 215, 166 S.E. 2d 671 (1969); *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (1968); *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1 (1968); *Freeland v. Orange County,* 273 N.C. 452, 160 S.E. 2d 282 (1968). Where the language of a statute is clear and unambiguous its plain and definite meaning controls and judicial construction is not necessary. *Davis v. Granite Corp.,* 259 N.C. 672, 131 S.E. 2d 335 (1963). But if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent. *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797 (1948).

[8] 'When the meaning of a tax statute is doubtful, it should be construed against the State and in favor of the taxpayer unless a contrary legislative intent appears. *Pipeline Co. v. Clayton, Comr. of Revenue, supra; Sabine v. Gill, Comr. of Revenue,* 229 N.C. 599, 51 S.E. 2d 1 (1948). On the other hand, statutes providing exemption from taxation are strictly construed. "Taxation is the rule; exemption the exception." *Odd Fellows v. Swain,* 217 N. C. 632, 9 S.E. 2d 365 (1940); *accord, In re Dickinson,* 281 N.C. 552, 189 S.E. 2d 141 (1972); *Sale v. Johnson, Comr. of Revenue,* 258 N.C. 749, 129 S.E. 2d 465 (1963).

G.S. 105-281 (1969 Cum. Supp.) expressly states that it is "the policy of this State to use its system of property taxation in such manner, through the classification of the aforementioned property, to encourage the development of the State of North Carolina as a distribution center." The phrase, "for the purpose of transshipment" must be construed in light of this policy.

Ordinarily, words of a statute will be given their natural, approved, and recognized meaning. *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d 433 (1951). However, when technical terms or terms of art are used in a statute they are presumed to have been used with their technical meaning in mind, absent a legis-

lative intent to the contrary. *Henry v. Leather Co.*, 234 N.C. 126, 66 S.E. 2d 693 (1951). We find nothing to indicate that the word "transship" has a special or technical meaning. *Cf. Smith, Kirkpatrick & Co. v. Colombian S. S. Co.*, 88 F. 2d 392 (5th Cir. 1937); *Larsen v. Insurance Co. of North America*, 252 F. Supp. 458 (W.D. Wash. 1965), *aff'd.* 362 F. 2d 261 (9th Cir. 1966). Therefore, we give the word its natural, approved and recognized meaning.

Among the accepted definitions of "transship" are the following: "Taking the cargo out of one ship and loading it in another." Black's Law Dictionary (rev. 4th ed. 1968). "To transfer from one conveyance or line to another." Funk and Wagnalls, Standard College Dictionary (1963). "To transfer for further transportation from one ship or conveyance to another." Webster's Third New International Dictionary (unabr. 1964).

[9] The above definitions place no time limit on the act of transshipping. The General Assembly provided that goods shall not be assessed for taxation when, among other requirements, they are "shipped into this State and *placed in a public warehouse* for the purpose of transshipment to an out-of-state or within the State destination." (emphasis added.) The fact that the property must be placed in a public warehouse before it can acquire nontaxable status connotes a break in transit not limited in duration by the statute. Apparently the General Assembly chose not to limit nontaxable status to property *temporarily* halted in shipment because such restrictions would be inimical to the expressed policy of the State. We hold the General Assembly intended to exempt from taxation the property specified in paragraph three of G.S. 105-281 (1969 Cum. Supp.) when it was placed in a public warehouse *for any length of time*. This view is strengthened by the fact that a time limit of twelve months was imposed on the storage period for the special class of personal property declared nontaxable in paragraph two of G.S. 105-281 (1969 Cum. Supp.). Hence the absence of a time limitation in paragraph three was not an oversight.

[10] The County construes the language of G.S. 105-281 (1969 Cum. Supp.), requiring the exempted property to be "placed in a public warehouse for the purpose of transshipment to an out-of-state or within the State destination *and so designated on the original bill of lading*" (emphasis added), to mean that the name of the ultimate consignee must be designated on the original bill of lading. We find this construction illogical. The pro-

---

**In re Appeal of Martin**

---

posed interpretation would result in a trap for the unwary taxpayer and severely hamper legislative policy expressed in the statute. Moreover, if the ultimate consignee is known to the consignor at the time the goods are shipped into this State and placed in a public warehouse, no logical reason occurs to us why the taxpayer would not ship the goods direct. Why place them in a warehouse? We hold, for obvious reasons, that such was not the legislative intent.

[11]   Finally, the County argues that since Carolina Transfer and Storage Company is named consignee on the bills of lading, its premises do not qualify as a public warehouse within the meaning of G.S. 105-281 (1969 Cum. Supp.) which provides, *inter alia:* "No portion of a premises owned or leased by a consignor or consignee, or a subsidiary of a consignor or consignee, shall be deemed to be a public warehouse within the meaning of this section despite any licensing as such." The County's construction of the quoted portion of the statute is, in our opinion, contrary to legislative intent. To say the warehouse destination of the shipment cannot be shown on the original bill of lading without destroying the recipient's status as a public warehouse accords the statute an absurd meaning and produces an absurd result. Statutory rules of construction require the Court to consider the language used in the statute, the mischiefs sought to be avoided, and the remedies intended to be applied. *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797 (1948) ; *Hunt v. Eure,* 188 N.C. 716, 125 S.E. 484 (1924) ; *Alexander v. Johnston,* 171 N.C. 468, 88 S.E. 785 (1916). Furthermore, if possible, "the language of a statute will be interpreted so as to avoid an absurd consequence." *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1 (1966). Applying these principles to the third paragraph of G.S. 105-281 (1969 Cum. Supp.), we hold the General Assembly intended to deny public warehouse status to the owned or leased premises of the *ultimate* consignee (or its subsidiary). Carolina Transfer and Storage Company, if a consignee at all, is an intermediate consignee designated as such by necessity for the mere purpose of receiving the shipment and warehousing it.

The burden is on the taxpayer to show that it comes within the exemption or exception. *Canteen Service v. Johnson, Comr. of Revenue,* 256 N.C. 155, 123 S.E. 2d 582 (1962) ; *Sabine v. Gill, Comr. of Revenue,* 229 N.C. 599, 51 S.E. 2d 1 (1948). We hold on this record that the taxpayer has carried its burden and is entitled to the nontaxable classification claimed under G.S. 105-281 (1969 Cum. Supp.).

For the reasons stated the decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Superior Court of Mecklenburg County for reinstatement of the judgment in favor of the taxpayer.

Reversed.

Chief Justice BOBBITT not sitting.