MRS. MARY GREY SABINE v. EDWIN GILL, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 15 December, 1948.)

**1. Pleadings § 15—**

A demurrer tests the sufficiency of the allegations of the complaint, admitting for the purpose their truth, to state any cause of action for which plaintiff may demand relief, and the demurrer should be overruled unless there is fatal defect either in want of sufficient averment to state a cause, or because of positive allegations showing that the supposed grievance is not actionable.

**2. Taxation § 24—**

Where a resident of this State is a beneficiary of income derived from a business carried on by active trustees in another state, each state may constitutionally tax the income from the business, the other state against the trustees as the *situs* of its earning and this State against the beneficiary as the *situs* of its reception and residence of the recipient.

SABINE *v.* GILL, COMR. OF REVENUE.

**3. Taxation § 23½—**

While double taxation is not favored, it is not *ipso facto* unconstitutional, and will be upheld when the intention to impose it is clear and its imposition is not discriminatory.

**4. Taxation § 29—**

In order for a resident taxpayer to be entitled to deduct income derived from a business situated in another state from his income taxable by this State, the taxpayer must show that he has a business or investment in such other state, that the income therefrom is taxable in that state, and that the questioned income is derived from such business or investment. G.S. 105-147 (10).

**5. Taxation § 23½—**

While the coverage of a taxing statute must be construed against the State, the burden is on the taxpayer to show that he comes within an exception or exemption, and the State will never be presumed to have surrendered or relinquished its taxing power unless the intention to do so is expressed in clear and unambiguous terms, admitting of no other reasonable construction.

**6. Taxation § 29—Where business of estate is managed by active trustees, resident beneficiary of income is liable for tax thereon notwithstanding state of situs collected income tax.**

In this action to recover income tax paid under protest. the complaint alleged in substance that plaintiff was entitled to a portion of the income from a business carried on in another state by active trustees, that the state of the *situs* of the business taxed the income therefrom, that the profit from the business was paid to a trustee in this State which distributed the income, and that plaintiff was forced to pay income taxes to this State on her share of the income thus derived. *Held:* Demurrer to the complaint was properly sustained since upon its allegations the business situated in such other state was owned by the estate and managed by active trustees, and therefore plaintiff did not "have" a business in such other state so as to bring her within the purview of G.S. 105-147 (10).

**7. Statutes § 5a—**

A statute must be construed as written, and while it is subject to judicial construction it may not be amended by judicial interpretation.

PLAINTIFF's appeal from *Burney, J.,* 25 March, 1948, WAKE Superior Court.

The action is for recovery back of income taxes paid under protest, and brought under authority of G.S. 105-267.

The plaintiff was at the time of the alleged liability for the tax a resident of the State of North Carolina and a beneficiary under a testamentary trust under which the income taxed was derived from a business carried on, as authorized by the will, by trustees in the State of Virginia, and had there been taxed as income earned in that state. The complaint alleges that the payment of the tax to the Virginia taxing authorities

was compulsory, and plaintiff contends that the facts entitle her to the deduction or exemption provided in G.S. 105-147 (10).

The trust above mentioned was set up in the will of James P. Grey, the father of the plaintiff, who was then a resident of Mecklenburg County, North Carolina, and who died in that county on the 30th day of December, 1942. The will was admitted to probate in Mecklenburg County and shortly thereafter, in an ancillary proceeding, was admitted to probate in the Corporation Court of the City of Bristol, Virginia. Executors to the will are the Commercial National Bank of Charlotte, F. L. Jackson, Mecklenburg County, North Carolina, and Robert E. Kell of the City of Bristol, Virginia. The executors named in the will qualified in North Carolina February 5, 1943, and thereafter, in the same month, F. L. Jackson and Robert E. Kell qualified as executors and trustees for the estate in Virginia; and all these parties are now acting as executors and trustees.

At the time of his death the testator-trustor owned about 93 per cent of a hosiery mill and business located in the City of Bristol, Virginia, under the name and style of Grey Hosiery Mills, which was then being operated as a partnership by the said testator and others residing in the State of Virginia. The will provided that the business should be carried on by the trustees named, and to that end, pursuant to authority of a judgment entered in an appropriate proceeding by the Superior Court of Mecklenburg County, North Carolina, and a decree entered by the Corporation Court of the City of Bristol, Virginia, the estate of the testator, through Robert E. Kell and F. L. Jackson, Virginia executors and trustees, was put into a partnership for the operation of the business by the trustees and business partners on the basis that the said estate was, and is, the owner of 93 per cent interest in the business, the remaining 7 per cent being owned by the other · partners; 3 per cent having been given to Jackson, individually, by the will. Under the will the Commercial National Bank of Charlotte, as executor and trustee, was made the custodian of all the assets of the estate and empowered to collect, receive and disburse all funds belonging thereto. In deference to this provision the Corporation Court of the City of Bristol, in which the will had been probated and the executors above named and trustees had qualified, in its decree directed, authorized and empowered the Virginia executors and trustees to pay over to and remit to the Commercial National Bank of Charlotte, as disbursing agent and depository, all the distributable income from the Grey Hosiery Mills business to which the estate of the testator should become entitled; and in pursuance thereto the Virginia executors and trustees paid over to and deposited with the said Commercial National Bank of Charlotte the distributable earnings of the Grey Hosiery Mills for the year 1943 to which the estate of the said James P. Grey was

entitled as the owner of 93 per cent interest in the business; and out of such distributable income so paid to it for the year 1943 the said Commercial National Bank of Charlotte paid and distributed to the plaintiff the sum of $40,114.51 during the year 1943, that being the portion of the distributable income which the plaintiff was entitled to receive as beneficiary under the will.

After this distribution, on demand of the taxing authorities of that state, the plaintiff paid to the State of Virginia a tax upon the income so received. The State of North Carolina demanded a payment of tax in the sum of $2,663.35 upon the distributed share of income received by the plaintiff. This the plaintiff paid under protest and as above stated brought this action for its recovery back.

The relation of the plaintiff as beneficiary under the will to the estate and the business so conducted is manifested in a portion of Item 6, reading as follows:

> "The remainder of the net annual income from my entire trust estate shall be paid to my children, Isabel, Mary and James, in monthly installments, and in the following proportions: Two-fifths to each of my daughters, Isabel and Mary, and one-fifth to my son, James, so long as they, and each of them shall live."

The daughter Mary, now Mrs. Sabine, is plaintiff.

The contest is as to the applicability of the statute invoked by the plaintiff, pertinent provisions of which read as follows:

> "G.S. 105-147 (10). Resident individuals and domestic corporations having an established business in another state, may deduct the net income from such business or investment if such business or investment is in a state that levies a tax upon such net income."

The defendant demurred to the complaint for that it did not state a cause of action. The demurrer was sustained and the action dismissed. From this judgment plaintiff appealed.

*Attorney-General McMullan and Assistant Attorneys-General Tucker and Abbott for the State.*

*Taliaferro, Clarkson & Grier and Robert P. Stewart for plaintiff, appellant.*

SEAWELL, J. The defendant demurs to the complaint on the ground that it does not state a cause of action. Such a demurrer admits the truth of all the allegations of fact and inferences reasonably drawn therefrom. *Ferrell v. Worthington,* 226 N. C. 609, 39 S. E. (2) 812; *Smith*

*v. Smith*, 225 N. C. 189, 34 S. E. (2) 148; *Kemp v. Funderburk*, 224 N. C. 353, 30 S. E. (2) 155. It tests the sufficiency of the allegations in law to present any cause of action for which the plaintiff may demand relief. A fatal defect may occur because of the want of averment of an actionable cause, or because of the pressure of positive allegations showing that the supposed grievance is not actionable. The foregoing summary of facts alleged in the complaint is premised on this rule.

The challenge to the complaint is that the factual situation presented in it does not entitle plaintiff to the exemption she claims by invoking G.S. 105-147 (10); and the question is reduced to a matter of statutory construction.

There is no doubt, nothing else appearing, both Virginia and North Carolina could constitutionally tax the income in question,—Virginia (against the active trustees) as the *situs* of its earning, and, perhaps we might say, the *situs* of the Virginia trust; and North Carolina (against the beneficiary) as the *situs* of its reception and residence of the beneficiary. *Guaranty Trust Co. v. Virginia*, 305 U. S. 19, 83 L. Ed. 16; *Lawrence v. State Tax Commission*, 286 U. S. 276, 76 L. Ed. 1102. But the court would still have to consider the question of statutory construction and intent.

Passing, for the moment the interstate feature, double taxation, even within the State, is not *ipso facto* necessarily obnoxious to the Constitution when the intention to impose it is clear and it is free from discriminatory features, however odious to the taxpayer. But it is not favored; and there is authority that statutes should be so construed as to avoid it when the intent is not clearly expressed. 51 Am. Jur., Taxation, sec. 286, and cases cited.

The plaintiff's argument, oral and in her brief, has brought to our attention instances in which the administrational practice here has avoided the inequity of double taxation, intrastate, by looking through form to substance,—through the trust to the immediate beneficiary. These we understand to be instances of simple holding or passive trusts. We do not question the correctness or propriety of these rulings. But because of the different relationships involved in the case at bar and in these instances, either as rulings of the Attorney-General or administrational interpretations of the taxing laws, they have no bearing upon the question before us except as possibly reflecting a policy worth considering in the field of interstate taxation whither the statute carries us, in its attempt to avoid similar taxation;—to avoid a practice which in most states of the Union is regarded as economically unsound, unduly burdensome, and unfair to those whose business activities cross state lines and provide a taxing *situs* in each. Many states of the Union have sought to avoid the more pronounced hardships of such double taxation by the enactment of reciprocal laws. Nossamon, Trust Administration and

Taxation, sec. 714, and cases cited. The statute under review is of that character, and so is the similar Virginia law. Virginia Tax Code (Appendix, 1942 Virginia Code, Tax Code, Ap., sections 39, 40). The statutes of the several states enacted for this purpose are far from universal in phraseology and scope; Altman and Keesling, Allocation of Income in State Taxation, pp. 195 to 197; and opinions based upon them must be studied with reference to the statutes they interpret. Opinions based upon disparate situations, factual and legal, rarely present rules of universal application, and we sometimes find that enthusiasm of expression has outrun the letter and spirit of the law.

This Court is not empowered to build upon the statute and enlarge the conditions upon which the plaintiff may be afforded relief; and the distance here between the trustees and the beneficiary seems to be too great for the judiciary to close the gap by making them to all intents and purposes one. The statute provides a deduction for individuals and domestic corporations "having an established business in another state" and provides that the net income from "such business or investment may be deducted if such business or investment is in a state that levies a tax upon such net income."

Therefore, in order to bring herself within the exemption, plaintiff must show (1) that she has a business or investment in the State of Virginia; (2) that the income therefrom is taxable in that state; and (3) that the questioned income is derived from such business or investment. With the last two requirements it may be conceded that the plaintiff has complied; but in number (1) there is a hurdle more difficult to surmount.

The exemption is to "resident individuals and domestic corporations *having* an established business in another state." The word "have," amongst many other meanings, is pertinently defined in the dictionaries as meaning "to hold in possession or control; to hold as property; to own," Webster; "to hold or possess in ownership; or own," Century. And it has been used immemorially to denote the ultimate in possession, control or ownership; "to possess corporally," Black's Law Dictionary.

True, there is an established business and an investment in the State of Virginia, but it belongs to the estate and not to the plaintiff or those like situated under the will. The latter, including the plaintiff, are neither legal nor equitable owners. The Virginia trustees are in the administration of an active trust, not a mere passive or holding trust. Under the will and orders of the court they were put into a partnership with Virginia partners; and the partnership property, including the business itself and whatever good will it may have, consists of a portion of the estate which is committed to them. Incidentally we may say that wide powers are given to the trustees to alter the form of the estate's

investment when necessary to do so. And, by the will, the whole remainder of the estate, of which this business happens to be a part, is put under obligation to the particular plaintiff here only for the period of her natural life. Not only is the income produced in Virginia by the activities of the trustees under the will using what is still the property of the estate, but under the will and the decrees of the court it does not leave the hands of the trustees until it is transmitted to a co-executor and trustee, the Commercial National Bank of Charlotte, in the State of North Carolina, and distributed by it. The trusteeship is far from a mere agency which might lend itself more readily to the concept of constructive holding or receipt from an agent. While the plaintiff has a legal right to the income, its character as a trust fund does not cease until so produced and distributed. It is an intangible which belongs to the trust estate and becomes hers only by distribution. *Blodgett v. Silberman,* 277 U. S. 1, 72 L. Ed. 749; *Latta v. Jenkins,* 200 N. C. 255, 156 S. E. 857.

We are reminded in appellee's brief that the burden is on the taxpayer to show that she comes within the exemption or exception, *Henderson v. Gill, ante,* 313, 49 S. E. (2) 754; *Valentine v. Gill,* 223 N. C. 396, 27 S. E. (2) 2; *Benson v. Johnston County,* 209 N. C. 751, 185 S. E. 6; and it is also true that the taxing law as to its coverage must be construed more strictly in favor of the taxpayer; and it seems to be especially pertinent to the problem under consideration that the state is never presumed to surrender or relinquish its taxing power unless the intention "to relinquish it is declared in clear and unambiguous terms admitting of no other reasonable construction." 51 Am. Jur., Taxation, sec. 526, and cases cited.

On analytical approach these rules are not in conflict; and from all of them, considering the need of clarity and precision in the taxing laws, we must assume that the Legislature chose adequate words and terms to express its intent,—subject, of course, to judicial construction, but not to judicial amendment. In this instance had the Legislature so intended they might have immunized those in like situation with the plaintiff by exempting all income *derived* from a foreign established business or investment taxable at its *situs.* Indeed, in its further reference the statute uses the term "derive,"—but it has already tagged the "established business or investment" as being that of the taxpayer who seeks the benefit of exemption; and this, we think, is an essential part of the classification or definition. If, on the principle contended for, we once go beyond the language of the law, the step by step rationalization of the statute might easily imperil legitimate revenues of the State not offensive to the policy which the reciprocal statutes under consideration seek to promote; *Guaranty Trust Co. v. Virginia, supra; Lawrence v. State Tax Commission, supra;* thus building up a "jurisdiction of concepts," rather than

one of law.  *Schubert v. Schubert Wagon Co.,* 249 N. Y. 253, 164 N. E. 42, 64 A. L. R. 293.

The plaintiff in this case has no such right in the established business or investment from which the revenue is derived and is not so related to it as would justify the Court in ignoring the trusteeship, which not only has the legal title, but the active custody, control and operation of the property and facilities which produced the income which the plaintiff received as a resident of the State.

The ably contested question of permissible statutory definition makes it appropriate to re-examine the limitations placed upon the Court in that respect: *In re Poindexter,* 221 N. C. 246, 20 S. E. (2) 49, 140 A. L. R. 1138; *Randall v. R. R. Co.,* 107 N. C. 748, 12 S. E. 605; *Norman v. Ausbon,* 193 N. C. 791, 138 S. E. 162; *S. v. Whitehurst,* 212 N. C. 300, 193 S. E. 657; *Rice v. Panel Co.,* 199 N. C. 154, 154 S. E. 69; 50 Am. Jur., sec. 228, p. 212.  We do not feel that the Court may take up where the lawmakers left off.

For these reasons we are of the opinion that the plaintiff has not brought herself within the exemption provided in the cited statute and that this affirmatively appears from the allegations in the complaint.

The demurrer was properly sustained, and the judgment must be

Affirmed.