ELIZABETH W. MOYE v. JAMES S. CURRIE, COMMISSIONER OF NORTH CAROLINA DEPARTMENT OF REVENUE.

(Filed 23 November, 1960.)

**1. Taxation § 23½—**

While the construction placed upon a revenue act by the Commissioner of Revenue is not controlling upon the courts, such construction will be given due consideration by the courts in interpreting the statute.

**2. Taxation § 29—**

Where a resident conveys to a trustee her interest in a business located in another state, but retains her right to all income from the trust, such income, having been subjected to income tax by such other state, is exempt from income tax in this state under G.S. 105-147 (10) (b), prior to its repeal by Ch. 1340, Session Laws of 1957, since the resident remains the beneficial owner of her share of the business in such other state.

**3. Same—**

Where a resident beneficiary is also named a co-trustee of a testamentary trust of a business located in another state, the resident beneficiary's income from the trust is not exempt from income tax in this State, notwithstanding that the beneficiary takes an active part as co-trustee in the management of the business and the income of the business is subjected to income tax by the state in which it is situate, G.S. 105-147 (10) (b), since the resident's ownership of the legal title as trustee does not constitute her the owner, in her capacity as beneficiary, of an established business in another state.

APPEAL by plaintiff and defendant from *Hobgood, J.,* 23 May 1960 Term, of WAKE.

This is a civil action instituted by the plaintiff against the defendant to recover income taxes paid under protest and heard in the court below by the Presiding Judge without the intervention of a jury upon an agreed statement of facts and stipulations of the parties. The facts necessary to a disposition of these appeals are as follows:

1. John W. Woolfolk and his three daughters (one of whom is the plaintiff in this action) were the major owners of the Woolfolk Chemical Works which was a Georgia partnership with an established business and an investment in real and tangible property in the State of Georgia. In 1942 the total of their combined interests in the business amounted to 67½%, of which amount 17% was owned by Mr. Woolfolk, 17½% was owned by his daughter, the plaintiff herein, and 16½% was owned by each of his other two daughters. The remaining interests in the business, amounting to a total of 32½%, were owned by parties who were not members of the Woolfolk family.

2. In 1942 the plaintiff, her two sisters and their father determined that upon the death of Mr. Woolfolk, management and control of the business by them as owners of the combined 67½% interest therein would be jeopardized, since all three of the daughters were married and two of them (including the plaintiff) lived in states other than Georgia and that this situation would result in the business being managed and controlled by the owners of the other 32½% interest who were not members of the Woolfolk family.

3. In order to alleviate this situation and to provide a means whereby the Woolfolk family members would maintain management and control of the Woolfolk Chemical Works, each of the three daughters (including the plaintiff) placed her respective interest in an *inter vivos* trust with the Fulton National Bank (of Atlanta, Georgia) as trustee and Mr. Woolfolk placed his interest in a trust under his last will and testament with the same bank and the plaintiff as co-trustees.

4. In the above-mentioned *inter vivos* trust established by the plaintiff as the Elizabeth W. Moye Trust (hereinafter referred to as the "Moye Trust"), the plaintiff reserved for herself as beneficiary a lifetime interest in its net income. In this trust she stipulated, *inter alia,* that during her father's lifetime she could modify or revoke the trust, that it was her express desire that the business of the Woolfolk Chemical Works be continued, that after her father's death there shall be created an advisory Board consisting of certain named individuals, with which the bank as trustee would consult regarding the business and which would settle any disagreement between the trustee and the beneficiaries regarding the operation of the business, and that vacancies on the Board would be filled only after consulta-

tion with the income beneficiary, who at all times involved in this action was the plaintiff herein.

5. By his last will and testament, Mr. Woolfolk appointed the bank and his daughter, the plaintiff herein, as co-executors of his estate and established the above-mentioned testamentary trust (hereinafter referred to as the "Woolfolk Trust"), transferring his interest in the business to the bank and his daughter, the plaintiff herein, as co-trustees, with joint authority to administer the trust and to operate the business, the net income thereof to be paid to his wife and three daughters (including the plaintiff) during his wife's lifetime and to his three daughters after his wife's death. Mr. Woolfolk's trust contained substantially the same provisions contained in the plaintiff's *inter vivos* trust regarding the continuation and operation of the business and the advisory Board.

6. Upon Mr. Woolfolk's death in 1945 and at all times thereafter (including the years 1952 through 1956), the Woolfolk Chemical Works was (and still is) managed, controlled and operated through the medium of the trusts as set forth above. Prior to the establishment of her own *inter vivos* trust, the plaintiff was owner in fee of her 17½% interest in the business and actively participated in its administration and operation. After establishment of her *inter vivos* trust (including the years 1952 through 1956), the plaintiff was settlor and beneficiary of her own *inter vivos* trust and beneficiary of her father's testamentary trust, and actively served as co-trustee of her father's testamentary trust. From the death of her father in 1945 until his estate was closed in August 1950, the plaintiff actively served as co-executor of his estate.

7. During the years 1952 through 1956 the plaintiff was a resident of the State of North Carolina and received certain income as beneficiary of the "Moye Trust" on which both the States of Georgia and North Carolina levied and collected income taxes. The North Carolina taxes were paid under protest and this action instituted in apt time for their recovery. It was stipulated below that if the plaintiff was entitled to deduct the income from the "Moye Trust" pursuant to the provisions of G.S. 105-147(10)(b), which statute was in effect during the years 1952 through 1956, then the plaintiff is entitled to recover the taxes paid on income from that trust in the sum of $6,054.26, plus interest thereon at six per cent from 14 June 1957.

8. It was further stipulated that if the plaintiff was likewise entitled to deduct her income from the "Woolfolk Trust" she is entitled to recover the amount of $1,032.23 paid under protest, together with interest thereon at six per cent from 14 June 1957.

The court, after considering the agreed statement of facts, the stipulations, and after hearing the argument of counsel, made the following conclusions of law:

"(1) That plaintiff is entitled to deduct from her gross income for the tax years 1952 through 1956, inclusive, the income received by her from the Elizabeth W. Moye Trust and is therefore entitled to recover of defendant judgment in the amount of $6,054.26, together with interest thereon from June 14, 1957.

"(2) That plaintiff is not entitled to deduct from her gross income for the tax years 1952 through 1956, inclusive, income received by her from the John W. Woolfolk Trust and is not entitled to recover that part of her demand for refund which is attributable to the inclusion of such income in her gross income."

Based on conclusion number (1), judgment was entered in favor of the plaintiff in the amount of $6,054.26, together with interest at six per cent from 14 June 1957. The plaintiff and the defendant appeal, assigning error.

*McDougle, Ervin, Horack & Snepp for plaintiff.*
*Attorney General Bruton, Asst. Attorneys General Abbott and Pullen for defendant.*

DENNY, J. The question for determination on the defendant's appeal is whether or not a North Carolina resident, who was co-owner of an established Georgia business and who for business reasons transferred her interest therein as settlor of a living trust to a trustee for her own benefit, is entitled to the deduction allowed by G.S. 105-147 (10) (b), before its repeal by Chapter 1340, Session Laws of 1957, on account of income received by the beneficiary of said trust when such income has already been reported to and taxed by the State of Georgia?

The pertinent portion of former G.S. 105-147(10)(b) and upon which the plaintiff is relying, reads as follows: "Resident individuals having an established business or an investment in real or tangible property in another state or other states may deduct the net income from such business or property but only to the extent that such income is in fact reported for taxation in such other state or states which levies or levy a net income tax."

The defendant contends that the facts in this case are controlled by the case of *Sabine v. Gill,* 229 N.C. 599, 51 S.E. 2d 1.

In the *Sabine* case, James P. Grey, a resident of Mecklenburg County, North Carolina and the father of Mrs. Sabine, owned 93% of a hosiery mill and business located in the City of Bristol, Virginia, trading under the name and style of Grey Hosiery Mills, which was

being operated as a partnership by James P. Grey and others residing in the State of Virginia. In his last will and testament, which was probated in Mecklenburg County, North Carolina, Mr. Grey set up a testamentary trust, providing that the hosiery business should be continued after his death by named Virginia trustees and the other partners owning the remaining seven per cent interest in the business. Under the will, Commercial National Bank of Charlotte, North Carolina, as executor and trustee, was made the custodian of all the assets of the estate and empowered to collect, receive and disburse all the funds belonging thereto. In deference to this provision, the Corporation Court of the City of Bristol, in which the will in an ancillary proceeding had been probated and under which the executors and trustees had qualified, directed, authorized and empowered the Virginia executors and trustees to remit to the Commercial National Bank of Charlotte, the distributing agent and depository, all the distributable income from the Grey Hosiery Mills business to which the estate of the testator should become entitled. In 1943, the Commercial National Bank of Charlotte paid and distributed to Mrs. Sabine the sum of $40,114.50, that being the portion of the distributable income which Mrs. Sabine was entitled to receive as beneficiary under her father's will.

Virginia levied a tax on this income and it was paid. North Carolina taxed it and the tax was paid under protest and suit brought for its recovery based on the provisions of G.S. 105-147(10), the pertinent parts of which at that time read as follows: "Resident individuals and domestic corporations having an established business in another state, or investment in property in another state, may deduct the net income from such business or investment if such business or investment is in a state that levies a tax upon such net income."

This Court said: "True, there is an established business and an investment in the State of Virginia, but it belongs to the estate and not to the plaintiff or those like situated under the will. The latter, including the plaintiff, are neither legal nor equitable owners. * * * The plaintiff * * * has no such right in the established business or investment from which the revenue is derived and is not so related to it as would justify the Court in ignoring the trusteeship, which not only has the legal title, but the active custody, control and operation of the property and facilities which produced the income which the plaintiff received as a resident of the State."

In Prentice-Hall (North Carolina State and Local Tax Service, section 11,645.50), it is said: "Resident guardian is taxable on income re-

ceived from securities held by Virginia trustee, though Virginia taxes the same income against guardian (citing *Guaranty Trust Co. v. Virginia,* 59 S.Ct. 1, 305 U.S. 19, 83 L. Ed. 16). *Unless trust was created by beneficiary himself with his own funds or property, for business or investment,* beneficiary of foreign trust is not regarded as having an established place of business or investment in property in another state." (Emphasis added.) The foregoing statement is based on an opinion rendered by the Attorney General of North Carolina to the Commissioner of Revenue on 5 January 1939, construing this identical statute, which opinion is now on file in the office of the Attorney General.

The construction placed upon the Revenue Act by the Commissioner of Revenue will be given due consideration by the Court, although we have repeatedly held that such construction is not controlling. *Cannon v. Maxwell,* 205 N.C. 420, 171 S.E. 624; *Powell v. Maxwell,* 210 N.C. 211, 186 S.E. 326; *Valentine v. Gill,* 223 N.C. 396, 27 S.E. 2d 2; *Bottling Co. v. Shaw,* 232 N.C. 307, 59 S.E. 2d 819; *Rubber Co. v. Shaw,* 244 N.C. 170, 92 S.E. 2d 799; *In re Vanderbilt University,* 252 N.C. 743, 114 S.E. 2d 655.

In our opinion, the *inter vivos* trust created by the plaintiff as settlor and in which she retained the right to all the income therefrom, did not defeat her right to the deduction allowable under G.S. 105-147(10)(b). The Moye Trust was created not for the purpose of releasing control of or the interest in the Chemical business, but for the purpose of concentrating the respective family interests in the business to guarantee its continued operation. The plaintiff continued to be the equitable owner of 17½% of the partnership and we hold that she is entitled to recover a refund for the taxes paid under protest in accord with the judgment entered below.

### PLAINTIFF'S APPEAL

The plaintiff contends that since the plaintiff was named as co-executor of the estate of J. W. Woolfolk and co-trustee of the testamentary trust, that she is entitled to deduct the income she received from the Woolfolk Trust under the provisions of G.S. 105-147(10)(b).

The plaintiff relies upon the *Sabine* case to the extent that in the *Sabine* case one of the reasons assigned why the plaintiff therein was not entitled to recover was because she held neither a legal nor an equitable interest in the testamentary trust, but as co-trustee in the Woolfolk Trust the plaintiff herein holds the legal title to the property in the testamentary trust.

It is true, the plaintiff is a co-trustee along with the Fulton Nation-

al Bank of Atlanta, Georgia, and they hold in custody the partnership interest of the J. W. Woolfolk estate under the testamentary trust for the purpose of continuing the business of the Woolfolk Chemical Works. The relationship of the plaintiff as a trustee under the testamentary trust is a fiduciary one and does not, in our opinion, give her by reason thereof an established business in another State within the contemplation of the provisions of G.S. 105-147(10)(b) insofar as the Woolfolk Trust is concerned.

In reply to a request from the Commissioner of Revenue, the Attorney General advised the Commissioner on 3 November 1938 as follows: " * * * Section 318 (4) of the Revenue Act of 1937 requires resident beneficiaries of a trust to return in this State sums distributed by the trustee during the taxable year. The taxability of such income is not affected by the fact that the State of the trust also lays a tax upon the same income.

"The trust was created by a person other than the taxpayer and the latter does not, within the meaning of section 322(10) of the Act (codified as North Carolina Code 7,880 (140) (10), later as G.S. 105-147 (10)), have a business or investment in the State of the trust." Biennial Report of the Attorney General of North Carolina, Volume 25, 1938-1940, page 74.

Again on 10 April 1940, the Attorney General was requested by the Commissioner of Revenue to give an opinion whether "sums received by a resident beneficiary from a foreign trust and derived from rents from land in other states are to be included in the gross income of the beneficiary. * * *

"Section 322 (5) provides that 'resident individuals * * * having an established business in another state, or investment or property in another state, may deduct the net income from such business or investment if such business or investment is in a state that levies a tax upon such net income.' This Section is inapplicable. The business or investment in such case is that of the trustee or trust estate and not that of the beneficiary. See my previous letters of November 3, 1938 and January 5, 1939." Biennial Report of the Attorney General of North Carolina, Volume 25, 1938-1940, page 127.

Therefore, in our opinion, the ruling of the court below as set forth in the second conclusion of law should be upheld, and it is so ordered.

Affirmed.