The judgment appealed from is set aside, and this suit is dismissed, at plaintiff's cost.

---

(58 South. 1030.)

No. 19,421.

Succession of SWANSON.

(June 4, 1912. On Application for Rehearing, June 28, 1912.)

*(Syllabus by the Court.)*

1. WILLS (§ 423*)—PROBATE—EX PARTE DECREE.

An ex parte decree probating a will and sending the universal legatee into possession of the estate is a prima facie valid judgment against the heirs at law of the decedent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 911–913; Dec. Dig. § 423.*]

2. WILLS (§ 293*)—OLOGRAPHIC WILL—PROBATE—EXTRINSIC EVIDENCE.

Where a part of the date of an olographic will has been torn off, extrinsic evidence is admissible for the purpose of proving what was the date of the instrument.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–672, 675–678; Dec. Dig. § 293.*]

3. WILLS (§ 171*)—OLOGRAPHIC WILL—REVOCATION.

The tearing of a will by a third person without the permission of the testator does not affect its validity. Where an olographic will, written in lead pencil, was torn up by the universal legatee under the mistaken impression that it was invalid, and the testator thereupon gathered and pasted the pieces in proper order on a sheet of paper, which he retained in his possession for several years, and finally delivered to the universal legatee for safe-keeping, *held,* that this evidence did not suffice to show that the testator intended to revoke the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 451; Dec. Dig. § 171.*]

Monroe, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the Succession of Alexander S. Swanson. Action by the alleged heirs against Melanie Levy to set aside the probate of his last will. Judgment in favor of plaintiffs, and Melanie Levy appeals. Reversed and remanded on rehearing.

A. D. Danziger, for appellant Levy. McCloskey & Benedict, for appellees Swanson and Bremner. Dart, Kernan & Dart, for appellees Johnston and others. Richard Lyons, for absent heirs.

LAND, J. This is an action by the alleged legal heirs of Alexander Swanson to set aside the probate of a paper purporting to be the last will and testament of the decedent in olographic form.

The grounds of nullity alleged are:

That the will offered for probate was not dated.

That the will offered for probate was revoked by mutilation, destruction, and defacement.

That the will was probated without notice to the legal heirs.

The action was brought against Mrs. Melanie Levy, who had been recognized and put in possession of the estate as universal legatee of the deceased by decree of the court having jurisdiction of the succession.

There was judgment in favor of the plaintiffs decreeing the alleged will and the probate thereof to be null and void. The defendant has appealed.

The judge a quo held that the purported will was void for want of a complete date, and that the omission of figures could not be supplied by parol evidence.

The document which was probated has

been sent up with the record. It is conceded that the original was written, dated, and signed by the deceased, but it appears that the writing was torn into a number of pieces, which were afterwards pasted on a sheet of paper. The document in its present condition reads as follows, to wit:

"New Orleans, La. Oct. 8, 19——
"I will all my property to Mrs Melanie Levy, and she to pay all my debts
"A. S. Swanson."

The figures following the numeral "9" were partly torn off. In the reconstruction of the document a scrap of paper showing two figures was pasted to the right of the "9." One of these appears to have been a part of an "0," and the other is merely a short straight mark. The procès verbal of the probate of the will recites that the instrument presented to the witnesses was written on one sheet of letter paper, beginning with the following words: "New Orleans, Oct. 8, 190 —" and the figure "1" on a small piece of paper presented as part thereof. This recital shows that the instrument was accompanied by a detached piece of paper on which appeared the figure "1." The witnesses recognized the testament as thus presented as having been entirely written, dated, and signed in the handwriting of the deceased. The instrument now before us shows that a piece of the original on the line of the date is missing. As above stated, the procès verbal of the probate of the will recites that a piece of paper on which was written the figure "1" was presented with the instrument. The evidence does not show what has become of this piece of paper.

The testimony of the defendant, Mrs. Levy, and of her son, Maurice Levy, if admissible, is sufficient to prove that the will bore the date of the year 1901. The instrument before us shows that two figures were written after the numerals "19," and that the first is a part of an "0," and the second may have been a part of a "1." Hence there can be

no doubt that the original instrument showed the date of the year.

When the instrument was presented for probate, the judge deemed that the date, "1901," was sufficiently proven.

[1] Ex parte decrees probating wills and sending legatees into possession are prima facie valid. Thomas et al. v. Blair et al., 111 La. 678, 35 South. 811. The burden of proof was on the plaintiffs to overcome this presumption, and they have adduced no evidence tending to show that the original instrument was not dated as of the year "1901."

Plaintiff's argument is that the date of the year as now appearing on the instrument is defective, and that parol evidence is not admissible to supply the omission of the figures "01." This argument would be conclusive if the date of the original instrument had been "Oct. 8–19." See Succession of Heffner, 48 La. Ann. 1088, 20 South. 281, where the date read, "this —— day of June, 1893."

The case here presented is one where the date was not defective in the original draft of the instrument, but a part thereof has been torn off in such manner as to mutilate the figures indicating the year in which the instrument was executed.

[2] It is well settled that secondary evidence is admissible in the case of the loss or destruction of a last will and testament. See Succession of Daniel Clark, 11 La. Ann. 124; Fuentes v. Gaines, 25 La. Ann. 106. There is no good reason why this rule should not be applied to the partial loss or destruction of a will.

[3] The next contention is that the will was revoked by mutilation, destruction, and defacement.

A preliminary statement of the relations that existed between Alexander S. Swanson and the family of the defendant may well serve to throw light to the history of the will in controversy.

Swanson for many years was in the employment of Adolph Levy, the husband of the defendant, and, after the death of Levy, entered into partnership with his son, Michel Levy. This partnership continued until the death of Swanson in the year 1910. Swanson was a bachelor, and lodged and boarded in the house of the defendant until a few weeks prior to his death.

According to the testimony of Mrs. Levy, Swanson wrote the will in her presence, and handed the paper to her. On perceiving that the writing was in lead pencil, Mrs. Levy jumped to the conclusion that the paper was invalid as a will, and thereupon tore the writing into a number of pieces. Swanson gathered up the pieces, and pasted them on a sheet of paper. Swanson kept this reconstructed instrument about his person for several years, and finally gave it to the defendant. This is a strange story, but it is corroborated in material respects by the testimony of two other witnesses. Michel Levy testified that Swanson showed him the document in question "many times"; that Swanson carried the will around in his pocket with other papers; that Swanson was given to drink, and was very eccentric. William Warner testified that Swanson on one occasion, when tipsy, showed him the same document, saying that he was going to give everything to Mrs. Levy. Warner further testified that Swanson carried the will in a little wallet, and that it was written in lead pencil, on office paper, looked pretty shabby, and was torn. We find no evidence in the record to contradict the positive statements of these three witnesses, to the effect that Swanson for a number of years preserved the mutilated will, and carried it on his person. There is no evidence that Swanson himself tore the will, and that Mrs. Levy re-constructed the document. The retention and preservation of the will by Swanson after its mutilation furnishes strong evidence against any presumption that he consented to the destruction of the instrument. The destruction of a will by a third person without the permission of the testator would not affect its validity. 1 Jarman on Wills, p. 160. In Succession of Blakemore, 43 La. Ann. 845, 9 South. 496, Bermudez, C. J., referring to the revocation of a will, said:

"It may be revoked expressly by a subsequent testamentary disposition, by the erasure of the signature to it, by its actual physical destruction, or tacitly in an unmistakable manner, by the testator himself."

The prima facie case made out by the probate of the will is strengthened rather than weakened by the evidence adduced on the trial of the cause.

The parol declarations of the dead man as to his mortuary intentions are irrelevant and immaterial but, if considered at all, preponderate in favor of the defendant. The plaintiffs were strangers to the deceased, and did not prove their alleged heirship to the satisfaction of the trial judge.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiffs' demands be rejected, and their suit be dismissed, with costs in both courts.

MONROE, J., dissents.

On Application for Rehearing.

PROVOSTY, J. A rehearing is granted, and the case is remanded for further evidence and trial, especially on the point of what was the state or condition of the will at the time of its presentation for probate— whether any fragment now missing was then present.