Elijah J. Jones, a frugal colored man, resident of Natchitoches Parish for many years prior to his death on the 31st day of October, 1947, left an estate in the parish consisting of a tract of improved land containing fifty (50) acres, more or less, and personal property. It appears that he married but once and that the wife of that marriage survived him. He left no forced heirs and his nearest collateral relations were two brothers, Shelton and Clinton Jones, and two sisters, Beulah Jones Williams and Annie Jones Simmons.
On December 26, 1946, the deceased executed a last will and testament in olographic form, wherein and whereby he bequeathed unto Doris Jones, a niece, daughter of his brother, Shelton Jones, one-half interest in his property and named her executrix of the will, and unto his nieces, Katherine Jones Dupre, Lillian Frances *Page 798 
Jones, also Shelton's daughters, and Narissa Williams, daughter of Beulah Jones, each an undivided one-sixth interest in his property.
Accepting as correct allegations of the opposition and statements of counsel in briefs, this last will and testament, presumably on the application of Doris Jones and the other legatees therein, was tendered for probate on January 12, 1948, and thereafter, no opposition being offered thereto, was probated by the District Court of Natchitoches Parish, and Doris Jones was confined as executrix thereof.
It appears that not long after executing the above mentioned last will and testament, allegedly on February 15, 1947, while on a visit to the City of Shreveport, and in the home of his sister, Beulah Williams, Elijah J. Jones undertook to write and execute another olographic will whereby he beqeathed his estate to his said brothers and sisters. It is about this instrument that the present litigation revolves.
On January 14, 1948, three of the legatees named in the latter will, to-wit: Clinton Jones, Beulah Jones Williams and Annie Jones Simmons, petitioned the court for its probate, but only presented what purports to be a duplicate original (carbon) thereof. It is alleged that the prior will had on January 12, 1948, been offered for probate, but that the same is not in reality the last will and testament of the deceased, Elijah J. Jones.
It is further alleged by the petitioners that the testator executed duplicate originals of the will on February 15, 1947; that said duplicate will, tendered for probate, was given to Beulah by the testator the day it was prepared and executed by him "with the request that it be safely kept so that in the event anything happened to the original it could be probated". There was no prayer for notice to any of the other interested persons, of the intention to have this latter will probated, but Doris Jones, individually and as executrix of the first one, appeared and filed opposition to the proposed probate. In her original opposition two grounds are assigned why the instrument should not be admitted to probate, to-wit:
1. That it being a duplicate original, probate thereof is not permissible prior to it being shown that the original had been destroyed in some manner other than by the testator himself;
2. In the alternative, the instrument is not entirely written, dated and signed by the testator.
By supplemental and amended opposition, probate of the said purported last will and testament is opposed on other grounds, to-wit:
3. That the same was prepared and signed by the testator while in a weakened mental and physical condition, due to worry and sorrow, and under duress of his sister, Beulah Williams;
4. That Elijah J. Jones destroyed the original of said last will a few days after signing same, by burning it;
5. That it is neither a duplicate nor an original because:
(A) A portion thereof is written in pencil and a portion is carbon;
(B) The penciled portion is not in the same handwriting as the carbon portion;
(C) That the date inserted therein was not written at the time other portions of the instrument were written;
(D) That the handwriting is not that of the testator.
After trial of the issues tendered by the mentioned pleadings, there was judgment in favor of the opponent sustaining her opposition, denying the application of the petitioners to have the will probated and dismissing their petition. They appealed to this court.
During the time covered by the transactions herein related, Elijah J. Jones was in bad health, augmented by senile decay. He was constantly under treatment of physicians and often came to Shreveport to consult one or more of them. He did so in December, 1946, and was a patient in a sanitarium of this city for several days. Prior to entering the sanitarium he placed in the custody of his sister, Beulah, some papers deemed by him to be of value. She thereafter declined to deliver the papers to Elijah. *Page 799 
On the day of the execution of the embattled will, Elijah, with his brother, Shelton, came to Shreveport with Mrs. Leon Friedman, a prominent white lady of Natchitoches Parish, who drove them directly to the home of Beulah. She, her husband and daughter, Narissa, were present. Immediately after entering the home, Elijah demanded of Beulah that she deliver the papers to him. She and her husband testified that his request was at once acceded to, but Shelton testified that Beulah refused to give the papers to Elijah until and unless he made a new will to his brothers and sisters; that she provided him with pencil, writing paper and a sheet of carbon paper and insisted that the will be written as a condition precedent to delivery of the papers to him. It is unnecessary, as we view the matter, to resolve this controverted question of fact. It is simply related here as a part of the history of the controversy among these colored people over the small estate of their kinsman.
Shelton testified that he stepped outside the room and did not see nor hear all that was done and said while the will was being written. Beulah and her husband both testified that the instrument presented for probate is a duplicate (carbon) of the original instrument and was entirely written, dated and signed by the testator. It was stipulated by counsel that the daughter, if introduced as a witness, would testify on this subject the same as did her parents. We are constrained to believe and hold that this testimony is not entirely correct. This carbon copy of the will was continuously in the possession of Beulah Williams from the time it was delivered to her by Elijah until tendered for probate. It begins with the following words and figures, to-wit: "Natchitoche La Feb 15/1947".
Whatever else may be said of the remaining part of the instrument as a last will and testament, it is clear to even the non-expert eye that the quoted words and figures were not impressed upon the paper by the use of a carbon sheet; but, on the contrary, were written with a lead pencil. The balance of the writing, it is clear, is in carbon. In addition to all of this, the quoted words and figures, we are sure, are not in the same handwriting as is the balance of the instrument. To create added suspicion against the quoted words and figures being the genuine handwriting of the testator, we are convinced from the testimony that Mrs. Friedman drove Elijah and Shelton to Shreveport on March 8th and not on February 15th.
A last will and testament, in whole or partly written in lead pencil is not invalid for that reason. See: Succession of Swanson, 131 La. 53, 58 So. 1030.
Nor is a last will invalid because the date thereof was not thereon written at the same time the will was written. See: Jones et al. v. Kyle, 168 La. 728, 123 So. 306; Succession of Guiraud, 164 La. 620, 114 So. 489; Succession of Cunningham,142 La. 701, 77 So. 506.
But, whether written in whole or part in lead pencil, or whether the date was written at time the will was written or afterward, all of the writing must be in the genuine handwriting of the testator.
These foregoing conclusions perforce impel us to hold that the instrument offered for probate, so far as it purports to be the last will and testament of Elijah J. Jones, is an absolute nullity. The law is inexorable in its requirements. It is Article No. 1588 of the Civil Code, to-wit:
"The olographic testament is that which is written by the testator himself.
"In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."
There is another and equally important reason why this purported duplicate original will and testament is null and void and cannot receive judicial approval by probate. Beulah testified that Elijah stated to her and her husband and daughter that he would place this instrument in his private box in a bank in the City of Natchitoches, together with the papers she delivered to him for safe-keeping. However, when the bank box was opened under order of the court, the will was not *Page 800 
therein, but the other papers were. Shelton Jones testified that a few days after he and Elijah returned from Shreveport, following the day this instrument was signed, he saw his brother burn the original document in his (Elijah's) home. This testimony is diametrically opposed to Shelton's own interest as he is one of the four legatees of this will.
It is argued that as Doris had a key to the bank box, she went into it, removed the will therefrom and destroyed it. We understand that the key of a box renter alone cannot unlock a box of this kind. It requires the use of the bank's master key and that of the renter to gain entrance to the box. No official or employee of the bank was introduced to testify in support of appellants' contention. Doris denied that she ever saw inside the bank box except one time when she accompanied Elijah.
The record is replete with evidence that Doris Jones was much loved by her uncle, Elijah; that in his affections she occupied first place. He and his wife had practically reared her from infancy. She was partially educated by him. She, in turn, rendered to Elijah in his last years, so far as she was able, services and attention that would be expected of a dutiful child. She was working in the City of Chicago in the year 1947, and gave up her job to be with Elijah in the last months of his life. In this connection, it is worthy of note that on August 9, 1947, Elijah consulted an attorney in the City of Natchitoches for the purpose of having papers prepared for the adoption of Doris so that she would inherit the entirety of his property, but was advised by the attorney that it would be more simple, and the same result would be more easily attained by the execution of a last will in her favor. The attorney prepared a will in his own handwriting wherein Doris was named sole heir, and evidently advised Elijah to copy and sign the same. He only signed what the attorney wrote out.
The foregoing related facts go far to prove, if they do not conclusively prove, that the will signed at Beulah's home did not correctly reflect the true wishes and desires of Elijah Jones; and this was an impelling reason why this last instrument should have been revoked by him by its destruction.
It is our opinion that the trial judge correctly adjudicated the issues tendered in this proceeding, and, for the reasons herein assigned, the judgment from which appealed, is affirmed at appellants' cost.