98 Cal.App.2d 380 (1950)
Estate of WILTON M. MORRISON, Deceased. RUTH ROGERS et al., Appellants,
v.
SECURITY TRUST AND SAVINGS BANK OF SAN DIEGO (a Corporation), as Executor, etc., Respondent.
Civ. No. 3990. 
California Court of Appeals. Fourth Dist. 
July 10, 1950.
 H. G. Sloane for Appellants.
 Renwick Thompson for Respondent.
 MUSSELL, J.
 Appeal from an order denying admission to probate of an holographic codicil.
 Appellants Ruth Rogers, Marjorie W. Phipps, Gladys Morrison, Lloyd Hanck and Mrs. J. Breckenridge are legatees and devisees named in a codicil to the will of Wilton M. Morrison and appeal from the order of the trial court denying its admission to probate.
 From the settled statement, in lieu of a reporter's transcript and clerk's transcript, it appears that Wilton M. Morrison *381 died in the city of San Diego on April 10, 1949. The Security Trust and Savings Bank of that city duly filed a petition for probate of will and codicil and deposited with the county clerk a formal typewritten and witnessed will bearing date December 6, 1948; also three documents in the handwriting of the decedent. The petition of the bank asked that the formal will be admitted to probate and that an adjudication be made by the court whether the three documents in the handwriting of the decedent constituted a valid holographic codicil to the last will and testament of the decedent. The trial court, after hearing, admitted the formal will to probate and found and decreed that the said three documents did not constitute a valid holographic codicil to the last will and testament of the decedent and said writings were denied admission to probate. The sole question presented is whether the three documents constitute a valid codicil to the formal will of decedent.
 It further appears from the settled statement that the decedent, for several months prior to his death on April 10, 1949, was suffering from cancer. On April 9, 1949, he was aware of his condition and in the afternoon of that day requested his friend and companion, Lloyd Hanck, to communicate with his lawyer, who had prepared the will of December 6, 1948. The attorney could not be reached. Between 2 and 3 o'clock in the afternoon of April 9th decedent had friends visit him at his apartment, listened to a broadcast of a baseball game and discussed the game with his friend, Lloyd Hanck. At about 3 o'clock Mr. Morrison complained, stating that he was not feeling well, and in the evening of that day, in the presence of his wife, Hazel Morrison, and Lloyd Hanck, decedent requested his wife to get him a pencil and a pad of paper. She handed these to him and he started writing on the top sheet, using a cushion in his lap for support. He requested Lloyd Hanck to move his seat as he wanted him to act as a witness. Decedent completed the writing in the course of 20 to 30 minutes, during which he paused frequently. He produced either from his pocket or from the writing pad a second sheet of paper. When the decedent finished writing, he affixed his signature to the top sheet and Mrs. Morrison and Mr. Hanck signed it as witnesses. While decedent was writing on the top sheet, Mr. Hanck observed that he "consulted with" some other paper while he was writing on the top sheet on the tablet and that the other sheet was underneath it; that decedent "had something under the top piece of paper on the tablet but it was not apparent whether he was writing on it or studying *382 it." The decedent held two pieces of paper when he folded them and put them in an envelope, sealed it and gave it to Mr. Hanck. He then said to Mr. Hanck: "Take it down to the bank and give it to Mr. Sutherland the first thing Monday morning. I might not be here. I might be dead." He said, "It was something for Hanck and the nurse and he hoped he would get it."
 Subsequent to decedent's death on April 10, 1949, there was delivered to the bank a sealed envelope upon which there was written in the handwriting of decedent:
 "April 9 1949"
 Security Trust & Sav Bank
 From W. M. Morrison.""
 It is conceded that the envelope and the writing thereon is not a part of the codicil. The envelope, when opened, contained two unnumbered sheets of paper, each in the handwriting of the decedent. The larger sheet of paper, dated, written and signed in the handwriting of decedent, and also bearing the signatures of Hazel M. Morrison and Lloyd A. Hanck, is as follows:
 "To Whom It May Concern"
 In San Diego April the 9th 1949
 I mean for all of this to be in my "Will" that is now in keeping at the Security Trust and Savings Bank. Well realizing that this is written under poor conditions it is only to help these people
 Wilton M. Morrison
 Signed
 Witness
 Hazel M. Morrison
 Witness
 Lloyd A. Hanck
 The second sheet contained the names of appellants and others with certain monetary sums set opposite their respective names. This document is also in the handwriting of the decedent and reads as follows:
 Tabular Material Omitted
 *383 Nurse Mrs. Ellis
 Mr. Sutherland was and is president of the Security Trust and Savings Bank of San Diego, executor named in the will of December 6, 1948, which was in the possession of Mr. Morrison's attorney. Decedent died Sunday morning, April 10, 1949, and the envelope, still sealed, was delivered to decedent's attorney.
 Mrs. Morrison testified that the first time she saw the second sheet containing the list of names was when it was shown to her at the bank after her husband had passed away. She stated that in the evening of April 9, 1949, she did not see any piece of paper with any writing of the decedent upon it prior to the death of her husband except the one which she signed as a witness; that she did see the decedent put the paper which he had signed in an envelope; that he also took a folded paper out of his pocket and put it in the envelope at the same time.
 Appellants contend that the principle of integration applies to the questioned documents and that the decision of the trial court is contrary to the law as stated in Estate of Dumas, 34 Cal.2d 406 [210 P.2d 697]. We conclude that appellants' contention is correct.
 [1] As was said in Estate of Wunderle, 30 Cal.2d 274, 281 [181 P.2d 874]:
 "In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. (Estate of Francis, 191 Cal. 600, 601 [217 P. 746]; Estate of Clisby, 145 Cal. 407, 409 [78 P. 964, 104 Am.St.Rep. 58]; Estate of Taylor, 126 Cal. 97, 100 [58 P. 454]; Estate of Bauer, 51 Cal.App.2d 636, 638 [124 P.2d 630]; Estate of Swendsen, 43 Cal.App.2d 551, 555 [111 P.2d 408]; see, Atkinson on Wills, 139, 143; 16 Cal.L.Rev. 154, 155.) Thus several writings, connected by sequence of thought (Estate of Swendsen, supra; Estate of Johnston, 64 Cal.App. 197 [221 P. 382]), folded together (Estate of Merryfield, 167 Cal. 729 [141 P. 259]), or physically forming one document (Estate of Clisby, supra; see, Estate of Skerrett, 67 Cal. 585 [8 P. 181]), *384 have been admitted to probate as constituting an holographic will."
 This rule is quoted in Estate of Dumas, supra, at page 478. In the Dumas case, the instruments admitted to probate consisted of three papers, all in the handwriting of the testatrix. The first page was written on January 20, 1935, in a "greenish-blue" colored ink. It was dated at the top and headed "The Last Will and Testament of Nellie Dumas." Following customary recitals of soundness of mind, etc., it read "The following bequests are to be given to my friends herein named." The executors were named and the document stated "In testimony I set my name this 20th day of January, 1935" and was signed Nellie Dumas and her address. A blank space of several inches followed thereafter. The second and third pages were written nine years after the first page and were in black ink. Minute spots of greenish-blue ink appeared on the reverse side of the third page. The second page was completely filled with bequests of mentioned property to various named persons and there was an interlineation on one item that was made by the testatrix some time after the second and third sheets were written. The second page was neither dated nor signed and the third concluded with the bequests, covering about three-fourths of the paper, at which place it was "Signed Nellie Dumas" and her address. No date appeared thereon. All papers remained in the possession of the testatrix at all times until April 3, 1947. On that date the decedent placed the envelope containing the papers in a white envelope, sealed the latter and handed it to a roomer in her home, with instructions to deliver it in decedent's safety deposit box, where it remained until after her death. The three sheets in the envelope were not mechanically fastened together but were folded in a unit in order.
 The contestants urged that the first page was a complete will in itself and that the second and third sheets were, in effect, codicils or new wills, but ineffective as such because the second sheet was neither dated nor signed and the third was not dated, both requirements of an holographic will.
 The court held that the rule of integration was applicable rather than the principle of incorporation by reference and the order of the trial court admitting the papers to probate as the holographic will of the decedent was affirmed.
 [2] In the instant case, it is quite clear that the two writings were intended by the testator to be his will. The testator stated in the first sheet of the codicil that he meant "all of *385 this" to be in his will. These words are meaningless unless considered in connection with the second sheet containing the names of the intended beneficiaries. The statement that the document was written under poor conditions and "only to help these people" is likewise meaningless without reference to the names of the people he wished to help, which are set forth on the second sheet. It is quite evident that the second sheet was in its present form and was in the testator's hands when the accompanying sheet was signed and witnessed. It is also quite evident that both documents were complete in their present form and were in decedent's custody at the time the signatures were affixed and that no change was made in them thereafter. Both the subscribing witnesses saw the decedent put both pieces of paper in the envelope, seal and deliver it for transmittal to the bank.
 While the witnesses did not see decedent write on the second sheet, that circumstance may well have been occasioned by decedent's desire that the exact amounts thereon stated be kept from his wife and his friend. Decedent did state, however, that there was something for Hanck and the nurse, which statement can only be explained by the fact that Hanck and the nurse were both named in the second sheet.
 Both sheets of paper are admittedly in the handwriting of decedent. They were written with a pencil. The appearance of the writing on the second sheet indicates that it was written "under poor conditions" as was the witnessed writing. This and other circumstances indicate that both writings were completed at or about the same time. The two writings are connected by sequence of thought and plainly indicate that they were both intended by the testator to constitute a codicil to his will.
 The respondent's contention that the decision in this matter involves the principle of incorporation by reference and not integration is without merit.
 Order reversed.
 Barnard, P. J., and Griffin, J., concurred.