[Civ. No. 19415.   Second Dist., Div. Three.   June 2, 1953.]

Estate of GUY W. MOODY, Deceased. WINONA MOODY, Appellant, v. THOMAS J. MOODY et al., Respondents.

Courtney A. Teel for Appellant.

J. B. Tietz and Edward Raiden for Respondents.

VALLÉE, J.—Appeal by the widow of Guy W. Moody, deceased, from that part of an order of the probate court wherein it was adjudged that an instrument offered for probate as a holographic will was entirely written, dated, and signed by the deceased, constituted his will, and that it be admitted to probate.

The instrument consisted of two sheets of paper and is as follows:

" [Obverse Side of First Sheet]
Nov 21
Thanksgiving Day

To Whom it May Concern:
I Guy W Moody, sober
but very lonely for my
family do hereby ~~will~~
will to
and leave to the following
People.

Felix J Stansauk — The home in
which they are now living —
cancel the balance of their mortgage.

My Brother Homer Lee Moody
The Service Station Lease Equipment
etc.

My Sister $10,000 Mrs Ethel Lyons
Mrs. Viola Swanson CL 750991
$5000.00 a wonderful Christian
and good friend
who deserves some happiness
[Base of Obverse Side of First Sheet]

[Reverse Side of First Sheet]

Set up a trust for my 3
children and make sure it
goes for their college education
my Insurance will probably
take care of this.

Monday
Dec 3, 1951

Thomas J Moody — $5000.00
My Sister
Venora Smith — Hughes Springs
Texas
5000.00

The balance of the estate
should go to my wife so she
can have a luxurious life
as she no doubt has in
mind. I have many many
regrets for my past, but no one
can erase this now

Signed — Guy W Moody

[Base of Reverse Side of First Sheet]

[Second Sheet]

The rest of my
belongings are at the
Valley Motel Montrose

Life is too very lonely
without my wife and
family

Guy W Moody"

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed." (Prob. Code, § 53.)

Appellant's contention is that the writing preceding the date December 3, 1951, is not part of the will. She says that Thanksgiving Day in 1951 did not fall on November 21st (it fell on November 22d) ; that the partial date and the complete December date demonstrate two wholly different operations, obviously written on different dates; that the writing preceding the December date fails as a will because it is neither dated nor signed; and it is only that part of the writing which follows the December date that is the will.

It is conceded that the instrument was entirely written by the hand of the deceased and that the signatures thereon are his.

The decision of the probate court was based solely on the writings. ■ A reviewing court is not bound by a construction of a document based solely on the terms of the written instrument, without the aid of extrinsic evidence. (*Estate of Wunderle,* 30 Cal.2d 274, 280 [181 P.2d 874].) The validity of that part of the instrument in question must therefore be determined entirely by reference to the applicable statutes and principles of law. ■ In ascertaining whether a will has been executed in conformity with statutory requirements, a construction favoring validity is preferred. (*Estate of Janes,* 18 Cal.2d 512, 515 [116 P.2d 438].)

■ An instrument fails of validity as a holographic will if it bears no date at all. (*Estate of Martin,* 58 Cal. 530, 532.)[1] ■ A holograph, in order to comply with the requirement that it be dated, must designate, in the testator's hand, a certain day, month, and year—the date must be complete. (*Estate of Price,* 14 Cal.App. 462, 463-467 [112 P. 482].)[2] ■ The date need not be the actual date of the execution. The instrument need not be "truly dated," nor "correctly dated," it need be merely dated; a wrong date will not vitiate it as a will. (*Estate of Fay,* 145 Cal. 82, 83-87 [78 P. 340, 104 Am.St.Rep. 17].)[3] ■ The date need not be written at the same time nor on the same day that the will or some part of it was written or signed. (*Estate of Clisby,* 145 Cal. 407 [78 P. 964, 104 Am.St.Rep. 58].)[4] ■ The use of well-known abbreviations, such as 11/21/51 or Nov. 10, '51, meaning November 10, 1951, constitutes compliance with the requirement. (*Estate of Lakemeyer,* 135

[1] Accord: *Estate of Vance,* 174 Cal. 122, 123 [162 P. 103, L.R.A. 1917C 479]; 1 Page on Wills, Lifetime ed. 700, § 388.

[2] Accord: *Estate of Vance,* 174 Cal. 122, 124-126 [162 P. 103, L.R.A. 1917C 479]; *Estate of Carpenter,* 172 Cal. 268, 270 [156 P. 464, L.R.A. 1916E 498]; *Estate of Maguire,* 14 Cal.App.2d 388 [58 P.2d 209]; 68 C.J. 720, § 403; 1 Page on Wills, Lifetime ed. 700, § 388. See anno.: 104 A.S.R. 28; 147 A.L.R. 903.

[3] Accord: *Estate of Vance,* 174 Cal. 122, 124 [162 P. 103, L.R.A. 1917C 479]; *Estate of Wilkinson,* 113 Cal.App. 645, 647 [298 P. 1037]; *Estate of Clark,* 55 Cal.App.2d 85, 87 [129 P.2d 969]; *Jones* v. *Kyle,* 168 La. 728 [123 So. 306, 307]; 1 Page on Wills, Lifetime ed. 702, § 388. See anno.: 104 A.S.R. 28; 147 A.L.R. 909.

[4] Accord: *Succession of Jones,* (La.App.) 38 So.2d 797, 799; anno.: 147 A.L.R. 913.

Cal. 28 [66 P. 961, 87 Am.St.Rep. 96].)⁵   In the absence of a statutory requirement that the date appear at a prescribed position on the instrument—there is none in this state—the position of the date is immaterial. It may be placed at the beginning, or at the foot, or in the margin, or in the body of the instrument. (*LaGrave* v. *Merle,* 5 La.Ann. 278 [52 Am.Dec. 589].)⁶ It need not precede the signature. (*LaGrave* v. *Merle, supra.*)⁷   Where a holographic will consists of separate sheets of paper, the insufficiency or absence of a date in one part may be remedied by the presence of a complete date in another part. (*Estate of Plumel,* 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100].)⁸   The omission of a date from an otherwise valid holographic will may not be supplied by a separate document where there is nothing to indicate that the undated writing is to be read or construed as a part of the dated writing. (*Estate of Wunderle,* 30 Cal.2d 274, 283 [181 P.2d 874].)   It follows that "Nov 21" is an incomplete date, and that "Dec 3, 1951" is a complete date and meets the requirement that the instrument be dated.

  A holographic will is signed if the signature is written by the testator himself; and since the statute does not appoint where it should be signed, a signing in any part—beginning, end, body, or margin—is sufficient if it appears from the face of the instrument itself that the signature was so placed with the intent that it should serve as a token of execution. (*Estate of Manchester,* 174 Cal. 417 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629].)⁹ In *Estate of Manchester,*

---

⁵Accord: *Estate of Chevallier,* 159 Cal. 161, 170 [113 P. 130]; *Estate of Olssen,* 42 Cal.App. 656, 658 [184 P. 22]; 1 Page on Wills, Lifetime ed. 700, § 388; 5 Cal.L.Rev. 266. See anno.: 104 A.S.R. 28; 6 A.L.R. 1455; 147 A.L.R. 906.

⁶Accord: *Succession of Fuqua,* 27 La.Ann. 271, 273; *Zerega* v. *Percival,* 46 La.Ann. 590 [15 So. 476, 478-480]; *Jones* v. *Kyle,* 168 La.Ann. 728 [123 So. 306, 307]. See anno.: L.R.A. 1916E 504; 147 A.L.R. 910.

⁷Accord: 1 Page on Wills, Lifetime ed. 702, § 388. See anno.: 104 A.S.R. 29; 147 A.L.R. 910.

⁸Accord: *LaGrave* v. *Merle,* 5 La.Ann. 278 [52 Am.Dec. 589]. See anno.: L.R.A. 1916E 505; 147 A.L.R. 911.

⁹Accord: *In re Stratton,* 112 Cal 513, 518-519 [44 P. 1028]; *Estate of Camp,* 134 Cal. 233, 237 [66 P. 227]; *Estate of McMahon,* 174 Cal. 423 [163 P. 669, L.R.A. 1917D 778]; *Estate of Henderson,* 196 Cal. 623, 635 [238 P. 938]; *Estate of Button,* 209 Cal. 325, 329 [287 P. 964]; *Estate of Brooks,* 214 Cal. 138 [4 P.2d 148]; *Estate of Kinney,* 16 Cal.2d 50, 52-56 [104 P.2d 782]; *Estate of England,* 85 Cal.App. 486 [259 P. 956]; *Estate of Sullivan,* 94 Cal.App. 674, 676-677 [271 P. 753]; *Estate of Wallace,* 100 Cal.App.2d 237 [223 P.2d 284]; *Estate of Bauman,* 114 Cal.App. 551 [300 P. 62]; *Estate of Kaminski,* 45 Cal. App.2d 779, 781 [115 P.2d 21]; *Estate of Gardener,* 84 Cal.App.2d 394

*supra,* the court declared: "The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature."

■■ The will of a person is the aggregate of his testamentary intentions, so far as they are manifested in writing (excluding nuncupative wills), duly executed according to the statute;[10] it is the sum total of the testamentary writings intended by the testator to constitute his will. It may consist of several sheets of paper, and it does not in and of itself matter that one of such sheets standing alone would not constitute an executed will. (*Mitchell* v. *Donohue,* 100 Cal. 202, 207-208 [34 P. 614, 38 Am.St.Rep. 279].)[11] If it appears that the writings were intended to be testamentary, the court will give effect to the intention if it can be done consistently with the requirements of the statute.[12]

---

[190 P.2d 629]; *Estate of Donoho,* Myr.Prob. (Cal.) 140; *Estate of Barker,* Myr.Prob. (Cal.) 78; *Estate of Johnson,* Myr.Prob. (Cal.) 5; *In re Harris' Estate,* 38 Ariz. 1 [296 P. 267]; *Murguiondo* v. *Nowlan's Ex'r.,* 115 Va. 160 [78 S.E. 600]; *Forrest* v. *Turner,* 146 Va. 734 [133 S.E. 69]; *Fenton* v. *Davis,* 187 Va. 463 [47 S.E.2d 372, 375-376]; *Hall* v. *Brigstocke,* 190 Va. 459 [58 S.E.2d 529, 532-533, 19 A.L.R.2d 921]; *Weems* v. *Smith,* 218 Ark. 554 [237 S.W.2d 880, 883]; *In re Brandow's Estate,* 59 S.D. 364 [240 N.W. 323]; *In re McNair's Estate,* 72 S.D. 604 [38 N.W.2d 449]; *Reagan* v. *Stanley,* 79 Tenn. 259, 260]; *Lawson* v. *Dawson's Estate,* 21 Tex.Civ.App. 361 [53 S.W. 64]; 1 Page on Wills, Lifetime ed. 705, § 391; 5 Cal.L.Rev. 354; 17 Cal.L.Rev. 297, 301. See anno.: 104 A.S.R. 30; L.R.A. 1916E 499, 503; L.R.A. 1917D 632; 29 L.R.A.N.S. 64; 46 L.R.A.N.S. 552; Ann.Cas. 1916E 140; Ann.Cas. 1918B 230; 29 A.L.R. 891, 896; 19 A.L.R.2d 926.

[10] *Lord Penzance in Lemage* v. *Goodban,* Law.Rep. 1 P. & M. 57.

[11] Accord: *Estate of Taylor,* 126 Cal. 97, 98 [58 P. 454]; *Estate of Merryfield,* 167 Cal. 729, 731 [141 P. 259]; *Estate of Henderson,* 196 Cal. 623, 633 [238 P. 938]; *Estate of Johnston,* 64 Cal.App. 197, 200 [221 P. 382]; *Estate of Morrison,* 98 Cal.App.2d 380 [220 P.2d 413]; *Reagan* v. *Stanley,* 79 Tenn. 259; *Alexander* v. *Johnston,* 171 N.C. 468 [88 S.E. 785, 786]; 16 Cal.L.Rev. 154. See anno.: 30 A.L.R. 424; 71 A.L.R. 530.

[12] Anno.: 1 Cof.Prob.Dec. 432.

Several holographic writings of which one is dated and signed and the others are only signed, by the testator, may be, in their entirety, a will. (*Estate of Hartley*, 181 Cal. 469 [184 P. 950].)[13] If the papers are all holographic and there is a dating and signing somewhere among them, it is immaterial when or where the dating or signing was done so long as it may be reasonably inferred that the testator meant all the papers together to constitute his will and that the signature was written with the intent that it should there serve as a token of execution. (*Estate of Merryfield*, 167 Cal. 729 [141 P. 259].)[14] It is not essential that the entire will be written on the same date; its writing need not have been a single, continuous performance. (*Estate of Clisby*, 145 Cal. 407, 409 [78 P. 964, 104 Am.St.Rep. 58].)[15] Signed but undated clauses added to a dated holograph have been admitted to probate as a part of the will on the theory that it is not essential that the entire will be written on the same date. (*Estate of Clisby*, 145 Cal. 407 [78 P. 964, 104 Am.St. Rep. 58].)[16]

In *Succession of Guiraud*, 164 La. 620 [114 So. 489], referred to with approval in *Estate of Finkler*, 3 Cal.2d 584, 601 [46 P.2d 149], it was said (114 So. 490):

"It is not necessary for the validity of an olographic will that it be written on the same day, at one time, and in the same ink. It suffices that it be written entirely, dated, and signed by the hand of the testator."

Our statute comes from the Code Napoleon. The statute of Louisiana also from that code is identical with ours. In *Succession of Cunningham*, 142 La. 701 [77 So. 506], the court quoted from the commentators on article 970 of the Code Napoleon, the following (77 So. 510):

"'"It must be remarked that the testator is not bound to write his dispositions in one context or in one day. Article 970 does not require for the olographic testament, as article 976 for the act of superscription of a mystic testament, that it be done without interruption or turning aside to other acts. . . . But when the testator has taken several days to make his testament, the accomplishment of the formality of the

---

[13]Accord: *Estate of Olssen*, 42 Cal.App. 656 [184 P. 22].

[14]Accord: *Estate of Skerrett*, 67 Cal. 585 [8 P. 181]; *Estate of Johnston*, 64 Cal.App. 197 [221 P. 382].

[15]Accord: *Estate of Dumas*, 34 Cal.2d 406 [210 P.2d 697]; *Jones* v. *Kyle*, 168 La. 728 [123 So. 306, 307]; *Succession of Smart*, 214 La. 63 [36 So.2d 639, 641]. See anno.: L.R.A. 1916E 504.

[16]Accord: *LaGrave* v. *Merle*, 5 La.Ann. 278 [52 Am.Dec. 589].

date and of the signature must be particularly ascertained.
. . . The testator, even after having taken several days to
write his dispositions can limit himself to one date; that is
to say, to the date of the day on which he has completed them,
and to a single signature for the whole. . . ." ' "[17]

In *Estate of Skerrett*, 67 Cal. 585 [8 P. 181], a dated copy
of a deed of gift and an undated letter, both in the handwriting
of the testator, were attached and addressed to the testator's
sister. The deed was invalid because it was not delivered.
The court held that the letter and the copy of the deed together
constituted a valid holographic will, saying (p. 588): "Neither
the copy of the deed nor the letter, taken by itself, constitute
a will; the one is not testamentary in its character, the other
has no date; but taking them together as the deceased left
them, forming one document, it is complete. The first part
furnishes the date, and the latter the testamentary character."
The holographic will in *In re Stratton*, 112 Cal. 513 [44 P.
1028], did not name a residuary legatee in the body of the
instrument. Following the body there appeared the following:

"Mrs Georgiana Hanham Stratton.
my Husband
Thomas Stratton."

The court held that the words "my Husband Thomas
Stratton" should be construed as part of the will, and that
the husband was the residuary legatee, saying (p. 518):
"There is no legatee named in the body of this concluding
portion of the will, but underneath and at the left hand
thereof is written the words, 'my husband, Thomas Stratton.'
Taken by themselves, these words have no apparent connection
with the other portions of the will, but the testatrix must be
deemed to have written them with the intention that some
effect should be given them, and that intention, so far as it
can be gathered from the will itself and the circumstances
under which it was executed, is to be ascertained by the
court, and effect given thereto accordingly. The order in
which the words of a will are written is not determinative of
the testator's intention, and, under a well-recognized rule,
this order will be transposed, if thereby the intention of the
testator can be ascertained."

In *Estate of Merryfield*, 167 Cal. 729 [141 P. 259], three

[17]See History of the Law of Holographic Wills in "The Will of George
Washington, Deceased." 5 Lawyer & Law Notes, No. 1, p. 24 (1951);
28 Yale L.J. 72.

sheets of paper torn from a writing pad were offered for probate as the will of the deceased. The first sheet was neither dated nor signed; the second was signed but imperfectly dated; the third was dated and signed. The third sheet was complete as a holographic will but did not mention certain heirs named in the other sheets. The court held the three sheets constituted one instrument; that they were to be read and construed together as one harmonious, homogeneous will. In *Estate of Henderson*, 196 Cal. 623 [238 P. 938], the document consisted of a single sheet so folded as to make four pages. The first page contained a date, bequests, and the signature at the end of the page. The last page was in the form of a letter to the daughter of the deceased, requesting her to make a gift to the son of the deceased who had not been mentioned on the first page. The writings on the first and last page were held to constitute a harmonious holographic will. In *Estate of Button*, 209 Cal. 325 [287 P. 964], the document was in the form of a letter. It consisted of four pages written on both sides of two sheets of paper. It was not signed at the end. The signature was on the left margin of the last page. It was held that the signature was sufficient and that the two sheets constituted the will.

In *Estate of Dumas*, 34 Cal.2d 406 [210 P.2d 697], the instrument admitted to probate consisted of three papers all written by the testatrix. The first page was written on January 20, 1935, in a greenish-blue ink. It was dated at the top and headed "The Last Will and Testament of Nellie Dumas." There followed recitals, bequests, and the naming of executors. The document then stated "In testamony I set my name this 20th day of January, 1935," and was signed by the testatrix, giving her address. A blank space of several inches followed thereafter. The second and third pages were written nine years after the first page and were in black ink. Minute spots of greenish-blue ink appeared on the reverse side of the third sheet. The second page was completely filled with bequests of mentioned property to named persons. There was an interlineation on one item that was made by the testatrix some time after the second and third sheets were written. The second page was neither dated nor signed. The third page continued with the bequests and ended about three-fourths of the way down the paper with "signed Nellie Dumas" and her address. No date appeared thereon. When found, the three sheets were in an envelope; they were not mechanically fastened together but were folded in a unit. The

court held the three papers considered together constituted one continuous and complete document—a valid holographic will—and that the continuity was not destroyed by the time interval between the writing of the first and second and third sheets.

In *Estate of Swendsen,* 43 Cal.App.2d 551 [111 P.2d 408], referred to with approval in *Estate of Wunderle,* 30 Cal.2d 274 [181 P.2d 874], the holograph was written on two separate sheets of paper, but only one of them was dated. It was not apparent from looking at the papers that they were connected in any way. Both were admitted to probate on the testimony of two witnesses who stated the testator declared that the two pieces of paper constituted his will. In *Estate of Morrison,* 98 Cal.App.2d 380 [220 P.2d 413], the question was whether two sheets of paper constituted a holographic codicil to a witnessed will. The first sheet was dated and signed by the testator; it was testamentary in character but did not name any beneficiaries. The second sheet was neither dated nor signed; it named various persons with monetary sums set opposite their respective names. The court held the two sheets were integrated and constituted a valid holographic codicil.

The real question here is whether the writing preceding the date "Dec 3, 1951" constitutes a component part of the will of the testator as he intended to execute it. The problem is one of integration. ▆▆▆ Integration is the association of disconnected writings by their internal sense, their coherence, or adaptation of parts. "In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. [Citations.] Thus several writings, connected by sequence of thought [citations], folded together [citation], or physically forming one document [citations], have been admitted to probate as constituting an holographic will." (*Estate of Wunderle,* 30 Cal.2d 274, 281 [181 P.2d 874].)

▆▆▆ Application of the stated principles to the sheet of paper under consideration leads unerringly to the conclusion that the writings preceding and following the date "Dec 3, 1951" together constitute one single instrument expressive of the will of the testator. It is patent that from the standpoint of the testator the writing between the date December 3, 1951, and his signature did not constitute a complete will, but that he intended the part preceding the December date to consti-

tute a part thereof. It is reasonably clear that had he not intended the writing preceding the date December 3, 1951, to be part of his will, he would not have written that date and the provisions immediately following it on the same sheet of paper. Both parts are wholly testamentary in character; they are integrated by their context; they are congruous, continuous, and make a consistent whole; they were obviously written for the single purpose of disposing of the testator's estate. The writing preceding the date "Dec 3, 1951" appears to have been written with different ink from the writing following that date. This fact is not of material significance. ▆▆▆ A holographic will need not be written in its entirety with the same ink.[18] ▆▆▆ The face of the writings discloses that the name of the deceased, written by him at the base of the reverse side of the first sheet, was intended by him as an executing signature to all that preceded it on both sides of that sheet. The second sheet need not be considered since appellant makes no point with respect to its admission to probate.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

[18]*Estate of Dumas,* 34 Cal.2d 406, 413-414 [210 P.2d 697]; *Estate of Taylor,* 126 Cal. 97, 99 [58 P. 454]; *Succession of Smart,* 214 La. 63 [36 So.2d 639, 641].